Argued and submitted May 2, resubmitted December 9, 1986, reversed April 15, 1987

In the Matter of the Marriage of

## JACOBSON,
*Appellant,*
*and*

## JACOBSON,
*Respondent.*

(87047; CA A36935)

735 P2d 627

Ronald E. Hergert, Oregon City, argued the cause for appellant. With him on the brief was Hibbard, Caldwell, Bowerman, Schultz & Hergert, Oregon City.

Clayton C. Patrick, Salem, argued the cause for respondent. With him on the brief was J. David Coughlin, Baker.

VAN HOOMISSEN, J.

Rossman, J., dissenting.

## VAN HOOMISSEN, J.

Mother appeals from a trial court's order denying her motion to "retain" custody of the parties' child. The dispositive issue is whether the automatic change of custody provision in the parties' 1975 dissolution judgment is enforceable. We conclude that it is not and that the trial court erred in changing custody from mother to father. Accordingly, we reverse.

The custody provision of the parties' 1975 stipulated dissolution judgment provides:

> "Petitioner-wife is awarded custody of the minor child of the parties * * * until said child attains the age of 12 and completes the school grade in which he is then engaged, subject to two 40-hour visitation periods per month by respondent-husband, provided the parties reside within a 50 mile radius of each other; if they no longer reside within such radius, then reasonable visitation. Upon reaching age 12 and completing the school year in which he is then engaged, the care, custody and control of said child shall be changed to the respondent-father, subject to the same above set forth visitation arrangements with petitioner-mother. If either of the parties feels that the aforesaid change of custody would not be in the best interests of the child, they shall be obligated to bring this matter to the attention of the Court within the 12 month period immediately preceding the time when the said change of custody is to take place. If the Court determines that said change of custody would not be in the best interests of the child, then this decree may be modified to provide that the care, custody and control of said minor child shall remain with petitioner-mother."

In 1985, mother obtained an order requiring father to show cause why she should not "retain" custody of the parties' child, then age 12, notwithstanding the automatic change of custody provision of the judgment.[1] After a hearing, the trial court stated:

---

[1] ORS 107.135(1) provides, in relevant part:

"The court has the power at any time after a decree of * * * dissolution of marriage * * * is granted, upon the motion of either party and after service of notice on the other party in the manner provided by law for service of a summons, * * * to:

"(a) Set aside, alter or modify so much of the decree as may provide for the * * * custody * * * of the minor children * * * ."

"The Court finds that there really is not substantial evidence that the best interests of [the child] would be served by modifying the decree. [Mother] has not proved a substantial change of circumstances. Therefore, the Court has no option but to deny the motion to modify it."

Mother contends that the trial court erred in not permitting her to retain custody. She argues that she has been a good custodial parent for 12 years, that the child is healthy and well-adjusted, that the parties' 1975 agreement contemplates that the child's best interest should always control and that she should not be required to show that his best interests would *not* be served by changing custody. Alternatively, she argues that she has shown a substantial change of circumstances and that the child's best interests will be served if he remains in her custody.

Father concedes that mother has been a good custodial parent and that the child is healthy and well-adjusted. He argues that the parties agreed in 1975 that the burden of proof would be on mother to show that a change of custody would *not* be in the child's best interests, that mother affirmatively must show both a substantial change in circumstances since 1975 and that the child's best interests will *not* be served by a change of custody before the automatic change of custody provision of the original judgment may be overridden.

Mother and the child have lived in Oregon since 1975. She remarried in 1976. Father remarried in 1979. In 1981, he and his wife moved to California. He has visited the child regularly in Oregon and in California. Both parents presented expert testimony as to the child's best interests. Although the experts reached different conclusions about which parent should have custody, they all agreed that the child is emotionally stable and enjoys a good relationship with each parent. The child expressed a desire to stay out of the conflict between his parents and a willingness to abide by the trial court's decision, but he told Dr. Sack and Dr. Boverman, mother's experts, that he would prefer to stay with her.[2] The trial court found that the parties are good parents, that the

[2] The record indicates that the trial court reviewed the deposition of a Dr. Gibbs. However, that deposition was not offered or received in evidence. It is not part of the record on appeal.

child is an "outstanding boy, way above the average," and that he has had a good relationship with each parent.

We conclude that the trial court misapplied well-established Oregon law applicable in change of custody cases. First, we find no authority in Oregon law for an automatic change of custody provision in a dissolution judgment. Clearly, a dissolution court would lack the power to order an automatic change of custody operative solely on the occurrence of a birthday, the end of a school year or any other such happening. Further, we doubt that a court could ever provide for an automatic change of custody on the happening of any general or specific event. Thus, we fail to see how the parties' agreement could give the dissolution court the power to do what the court itself could not do. We hold that the dissolution court lacked power to provide for an automatic change of custody in this case. The language in the judgment that does that is unenforceable. *See Gibson v. Gibson,* 193 Or 139, 144, 237 P2d 498 (1951); *Moore and Moore,* 84 Or App 182, 184, 733 P2d 482 (1987); *Slauson and Slauson,* 29 Or App 177, 183, 562 P2d 604 (1977).

The automatic change of custody provision of the judgment turns well-established Oregon law concerning who has the burden of proof in a custody modification case on its head. In *Greisamer and Greisamer,* 276 Or 397, 400, 555 P2d 28 (1976), the Supreme Court stated:

> "It is clear * * * that the original decree awarding custody to one of the contesting parents will not be disturbed unless the plaintiff seeking a change in custody adduces evidence showing (1) that subsequent to the original decree *events relevant to the capacity of the plaintiff or the custodial parent to properly take care of the child have changed,* and (2) that considering the change in circumstances in the context of all relevant evidence it would be for the best interests of the child to change the custody from the custodial parent to the other. Step one in the inquiry may be satisfied by showing that after the original decree awarding custody was entered, the custodial parent's circumstances made him less capable of providing care for the child, or that the circumstances of the plaintiff seeking a change in custody had improved, or that both such conditions arose following the initial decree." (Footnote omitted; emphasis supplied.)

*See Henrickson v. Henrickson,* 225 Or 398, 403, 358 P2d 507

(1961); *Bogh v. Lumbattis,* 203 Or 298, 300, 280 P2d 398 (1955); *Hurner v. Hurner,* 179 Or 349, 359, 170 P2d 720 (1946). In the usual case, the person trying to change custody has the burden of proof. In this case, the original judgment shifts that burden to the person trying to preserve the *status quo.* Mother may retain custody only if she shows that a change of custody would *not* be in the child's best interests. That is so, even though it is undisputed that she has been a good custodian for 12 years and the child has told the experts that he would prefer to stay with her.

Father relies primarily on *Rorer v. Rorer,* 10 Or App 479, 500 P2d 734 (1972).[3] That case is distinguishable. In *Rorer,* the relevant clause in the parties' dissolution judgment did not purport to change *custody* of the parties' children. Rather, it provided for what might be characterized as "extended visitation" with the father for a period of two school years, or about eighteen months, with the mother having the children with her during the summer months between the two school years. *Rorer* explained that a custody agreement is not binding on a modification court, or on this court in the exercise of *de novo* review, even though the agreement may have been approved by the trial court and incorporated in the dissolution judgment. 10 Or App at 486.

Father's argument that, under the provisions of the judgment, the *status quo* is that he is to have custody when the child reaches age 12, ignores the reality that, for the *child,* a change of custodial parent is involved. It also elevates form over substance. As the Supreme Court noted in *Greisamer and Greisamer, supra,* the rule is that the party seeking a change in custody must first show "that subsequent to the original decree events relevant to the capacity of the plaintiff or the custodial parent to properly take care of the child have

---

[3] In *Rorer,* the parties' custody agreement was incorporated in their dissolution judgment. The mother was awarded custody of the children, and the father was awarded visitation. The judgment contained what was termed a "two year transfer" clause, pursuant to which the children were to spend two school-year periods with the father, the transfer to occur before each child completed the eighth grade. No change of custody was in issue. Later, the mother moved to modify the judgment to delete the clause, arguing that the transfer was unwise, particularly if exercised at that time, and that the children should not be uprooted and removed from their home, school and friends. The modification court concluded that the mother had not shown a change of circumstances sufficient to modify or that the children's best interests would be served by modification, and it denied her motion. On appeal, we affirmed.

changed." 276 Or at 400. We reject a negative application of the burden of proof rule in custody modification cases.

Father's argument also ignores well-established Oregon law that a modification court's primary consideration must always be the *child's* best interests, not the interests of a parent. ORS 107.137(1); *see Boone and Boone,* 75 Or App 413, 706 P2d 205 (1985). In this case, the trial court did *not* affirmatively find that the child's best interests would be served by changing his custody. It found only that "there really is not substantial evidence that the best interests of [the child] would be served by modifying the decree" and that "mother has not proved a substantial change of circumstances." The court concluded, therefore, that the automatic change of custody provision of the 1975 judgment could not be overriden. Thus, the child's best interests became, at best, a secondary consideration.

It is not clear from the record that the trial court considered the specific statutory considerations relevant to a change of custody, *see* ORS 107.137(1),[4] or other relevant considerations that may have shed light on what was in the child's best interests at the time.[5] Specifically, the court appears to

---

[4] ORS 107.137(1) provides:

"(1) In determining custody of a minor child pursuant to ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court may consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child; and

"(c) The desirability of continuing an existing relationship."

[5] For example, in comparing the child's present school with the school he would attend in California, the court stated:

"Tule Lake versus Portland. Again, it's a rural setting, Tule Lake. It's a small school, doesn't have all the advantages that a Beaumont or a Portland school might have. But it has other advantages that the Portland schools don't have. *I don't know what those are. I'm not going to speculate on it.*" (Emphasis supplied.)

Comparing geography, the court stated:

"The geographic location, it's remote, and visitation has been difficult for Mr. Jacobson and could be difficult for the mother if there's a change, but that, again, is not the primary thing the Court has to consider. *The change may be beneficial. Again, I'd be speculating. I don't know.*" (Emphasis supplied.)

That simply does not measure up to the standards of Oregon law. *See Niedert and Niedert,* 28 Or App 309, 313, 559 P2d 515, *rev den* (1977); *McCutchan v. McCutchan,* 5 Or App 96, 98, 483 P2d 93 (1971).

have given little weight, if any, to the child's expressed preference to stay with his mother. *See Tingen v. Tingen,* 251 Or 458, 461, 446 P2d 185 (1968); *Hurner v. Hurner, supra,* 179 Or at 365.

The dissent misreads our holding in this case. We do *not* hold that "*all* stipulated, court-approved provisions in dissolution decrees providing for a future change of child custody from one parent to another are unenforceable." (Emphasis in dissent, footnote omitted.) 84 Or App at 711. We hold only that the automatic change of custody provision of the judgment in this case is unenforceable. The application of this holding to other and different cases is not in issue here.

The dissent concludes that the trial court erred in not finding a change of circumstances, 84 Or App at 713, that the modification court's responsibility was to look to the child's best interests, 84 Or App at 713, and that it would remand the case to the trial court "with instructions to determine whether a modification is in the best interests of the child." 84 Or App at 713. A remand is unwarranted. There is no evidence in this record on the basis of which a modification court could conclude that the legal requirements for changing custody have been satisfied.[6]

Reversed. Costs to mother.

**ROSSMAN, J.,** dissenting.

I am taken aback by the majority's sudden and sweeping declaration that *all*[1] stipulated, court-approved provisions in dissolution decrees providing for a future change of child custody from one parent to another are unenforceable. Not only does this significant revelation come out of the blue —neither party raised any question of unenforceability either

---

[6] *See Padbury and Padbury,* 46 Or App 533, 536, 612 P2d 321 (1980); *Hall and Hall,* 46 Or App 473, 478, 611 P2d 1198 (1980); *Niedert and Niedert, supra* n 5, 28 Or App at 316; *Crane v. Crane,* 17 Or App 637, 640, 523 P2d 596 (1974); *Miller v. Miller,* 10 Or App 330, 332, 499 P2d 826 (1972); *McCutchan and McCutchan, supra* n 5, 5 Or App at 98.

[1] The majority's assertion that its holding is limited in application to the custody provision *in this case* is nonsensical. Clearly, the net effect of the majority opinion is to render unenforceable any and all provisions providing for a future change in custody, regardless of whether the change is scheduled for one month or ten years after the date of the original judgment and regardless of whether the scheduled change is in the best interests of the child.

at the trial or appellate level—it represents a policy choice that should be left to the legislature. I also reject what appears to be the underlying theme of the opinion, namely, that the holding will somehow serve the best interests of children.

There is absolutely *no* legal basis for holding that a trial judge lacks the authority to authorize a future change of custody.[2] In fact, the existing law is directly contrary. ORS 107.105 specifically provides that the court has the power to award custody of a child to one or both parents. ORS 107.137 provides that, in doing so, the court shall give primary consideration to the child's best interests and welfare. Without question, these sections fully authorize the court to award custody first to one parent and then, after a specified time, to the other, if the court finds that such an arrangement is in the best interests of the child.

Surely, what caught the majority's eye in this case is the fact that so many years of uninterrupted custody passed before the preordained transfer was to take place. If, instead, the stipulated decree had provided for one parent to have custody for the first four years while the noncustodial parent obtained a college education, and a reversal of custody for the next four years so that the other parent similarly could obtain an education, I doubt that the majority would have held the arrangement unenforceable. Unfortunately, however, rather than limit its discussion to the facts of this particular case, the majority—apparently bent on playing a legislative role—proclaims all change of custody provisions unenforceable. Why make a pronouncement that dooms any and all such custody arrangements, regardless of whether both the parents and the court are satisfied that such an arrangement is in the best interests of the children? Certainly, our role is not to force parents into a bitter custody fight, which I fear may, only too often, be the result of the majority's holding.

Accepting that a stipulated, court-approved provision for a future change of custody is enforceable, if it has been determined to be in the best interests of the child, the question becomes what happens when, as here, one of the parents later

---

[2] It is unnecessary at this time to determine whether the provision that permits either parent to move the court for a modification before the scheduled change in custody is imminent is enforceable. The provision requires that the motion be filed before the child's 12th birthday. Mother filed her motion after the child's 12th birthday.

seeks to modify the provision? (Obviously, such a provision is subject to modification on the motion of either parent. ORS 107.135(1)(a)). Historically, the case law provides that, before the trial court may exercise its power to modify a decreed custody award, it must determine that (1) there has been a *change of circumstances* since the time of the court's last resolution of custody and (2) the change will be in the *best interests of the child.* With respect to both determinations, the party seeking to modify the custody arrangement, as provided for in the original judgment, bears the burden of proof. Here, mother seeks to modify the judgment. Accordingly, the burden of proof is hers.[3]

In this case, the scheduled change requires uprooting the child out of a community that he has resided in for ten years. Because the parties lived in the same locality when they stipulated to a change in custody, this uprooting was not anticipated and, therefore, represents a substantial change in circumstances. Accordingly, the sole dispositive factual determination in this case is whether the move is in the best interests of the child.[4] *See Smith and Smith,* 290 Or 567, 624 P2d 114 (1981); *compare Brink and Brink,* 75 Or App 665, 706 P2d 1015, *rev den* 300 Or 451 (1985). Therefore, because it is the trial court's duty to make that determination in the first instance, which it did not do in this case, I would remand and instruct it to do so.[5] I believe that this is the way *this* case

---

[3] Contrary to the majority's assertion, placing the burden of proof on mother does not turn well-established Oregon law "on its head." In *Greisamer and Greisamer,* 276 Or 397, 400, 555 P2d 28 (1976), the court noted that the general rule in modification proceedings is that the party moving for a modification *has the burden of proof.* Therefore, it held that, if custody has been awarded to one parent, the party seeking a change in custody (or, in other words, the party seeking the *modification)* must adduce evidence showing a change in circumstances and that the modification is in the best interests of the child. Here, mother seeks to modify the custody arrangement provided by the judgment.

[4] Although we need not reach the issue here, in my opinion a change in custody from one parent to another always represents a substantial change in the child's life that requires the court to determine whether the proposed change is in the best interests of the child if it is protested by either parent.

[5] The net effect of the majority's holding that change of custody provisions are unenforceable is that father is thereby transformed into the party seeking a modification. Therefore, even though the parties entered into the stipulated decree after agreeing that father would have custody after the child's twelfth birthday, in order to hold mother to her agreement, father must show a change in circumstances in addition to proving that the scheduled change is in the best interest of the child. Not only is this result outlandish, in that mother is the one who moved the court for a modification but, given the fact that father may not have entered into the stipulated decree but for the change of custody provision, it is patently unfair to him.

should be resolved, and that is why I dissent.

Richardson and Newman, JJ., join in this dissent.