Argued and submitted December 4, judgment modified in part; otherwise affirmed
October 3, 2001

In the Matter of the Marriage of

Gary A. COMPTON,
*Respondent - Cross-Appellant,*
*and*

Cari C. COMPTON,
nka Cari C. Clark,
*Appellant - Cross-Respondent.*

96-1297; A105930

33 P3d 369

Charles S. Spinner argued the cause for appellant - cross-respondent. With him on the briefs was Spinner & Schrank.

George W. Kelly argued the cause and filed the brief for respondent - cross-appellant.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Mother appeals from a judgment modifying the parenting-time provisions of the original dissolution judgment. She assigns error to the trial court's adoption of father's parenting plan, arguing that it is not in the best interests of child. Father cross-appeals and assigns error to the allocation of travel expenses in the modified judgment, because it forces him to bear a greater burden of the travel expenses than mother. On *de novo* review, ORS 19.415(3), we modify the judgment.

The parties married in 1987 and had a daughter in 1990. They separated in January 1995, and an Oregon court dissolved their marriage in March 1997. Pursuant to a parenting plan that the parties developed in mediation and incorporated into the dissolution judgment, mother was awarded sole legal custody of child and father was given weekend parenting time. The parties had followed this plan since their separation in 1995. Also discussed during mediation and incorporated into the parenting plan was the possibility of mother's relocation to either Australia or Phoenix, Arizona. The plan provided that

"[s]uch a move shall not be considered by either party a change in circumstances to support any modification of custody, though it could be a reason [for] the parties to modify the present timesharing schedule."

Despite that provision, after mother resolved to move to Australia, father initiated proceedings in November 1997 to modify custody.

Before trial, the court ordered the parties to participate in a comprehensive family evaluation. The evaluation was based on individual and joint interviews of both parents and their new partners, as well as home visits to observe child in each environment. Various personality assessments were also included in the evaluation. Dr. Sanders, the psychologist who performed the evaluation, concluded that while both parents are "highly capable of providing parenting" to child, mother had been the principal parent throughout child's life and, thus, she should retain sole legal custody.

Although he recognized the difficulty in establishing a suitable parenting plan, Sanders nonetheless recommended a detailed parenting schedule for father. The schedule included a recommendation that child reside with father in Oregon for three months every year, from July to October.

At trial, father proposed that the court adopt the basic parenting schedule recommended by Sanders or, alternatively, grant him custody of child. Mother objected to Sanders' plan because the three-month period between July and October coincides with the third quarter of the Australian school year so, under this plan, child would miss an entire quarter of school each year. In support of his plan, Sanders testified that

> "having a three month block of time I thought was probably the minimal through which actual parenting could be accomplished recognizing that that took [child] out of the third quarter of her academic year, but it was also my opinion that tutoring or enrollment in some kind of formal educational experience would likely compensate for the disruption in continuity of her education."

Father also testified that, if his plan was adopted, he would enroll his daughter in some type of formal education and keep her in contact with her Australian teachers through e-mail and video conferencing.

In response, mother called several experts who testified that the July to October stay would not be in child's best interests because it would significantly disrupt child's education and socialization in Australia. Dotter, a teacher for 22 years, testified that oftentimes when a student misses a significant amount of time from school, the student spends most of the time trying to catch up socially instead of academically. Thus, according to Dr. Colvin, one of mother's experts, the disruption in the school year would be "very detrimental to [child's] learning, severely detrimental especially over the long term," and may "lessen her opportunity for developing her potential." Colvin recommended that, if child had to miss time from school, the time missed should occur during the end or beginning of the school year. He stated that the least amount of learning was accomplished during those times.

Mother proposed an alternate plan that would minimize the amount of school child would miss while still providing parenting time for father. Under that plan, father would receive three to four weeks of parenting time each year, during December and January, and an additional one to two weeks during that time every other year. Father would also receive four additional weeks during the year, to coincide with one of child's two-week vacation periods. Mother's plan also included two to four weeks of additional parenting time if father traveled to Australia to take it. Father objected to this plan because it did not provide him with what he considered "quality" parenting time. Sanders explained that "it's very hard to be a parent during the excitement of Christmas," and, under mother's plan, father could not "really be involved in the parenting process." Father also objected to mother's plan because, during some years, if he did not travel to Australia, he would have as little as seven weeks of parenting time with his daughter.

After the trial, the trial court issued a series of opinion letters stating that Sanders' proposed plan was the best of those presented and that "[h]ypothetical attempts by the court to chart some other course have resulted in more problems than solutions." In March 1999, the trial court entered a modified dissolution judgment. The relevant provisions of the judgment state:

"a.  JULY TO OCTOBER PARENTING TIME.

"(1)  Petitioner is awarded parenting time in Oregon each year from July 5, 6, or 7, to the corresponding date in October.

"* * * * *

"(6)  Each party should pay their own roundtrip airfare, or their designated escort's roundtrip airfare, and travel costs and equally divide the roundtrip airfare for the minor child. * * *

"b.  CHRISTMAS PARENTING TIME.

"(1)  Petitioner is awarded parenting time with the minor child in the U.S. in even-numbered years as follows:

"(a) December 20th at 10:00 a.m. to December 24th at 10:00 p.m., at Petitioner's parents' home in Phoenix, Arizona;

"(b) December 25th at 6:00 p.m. to December 26th at Petitioner's parents' home in Phoenix, Arizona; and

"(c) December 27th to January 9th at 8:00 p.m. at [petitioner's] home in Oregon.

"(2) Petitioner is awarded parenting time with the minor child for 14 consecutive days and nights in Australia commencing January, 2000, and every other January thereafter.

"* * * * *

"(3) Petitioner shall pay the roundtrip airfare for the minor child for the Christmas parenting time in even-numbered years from Australia to Phoenix and the minor child's roundtrip airfare from Phoenix to Oregon. Petitioner shall also pay for his roundtrip airfare from Oregon to Phoenix. Petitioner and Respondent shall equally divide the cost of Respondent's roundtrip airfare from Australia to Phoenix.

"(4) Petitioner shall pay all transportation and travel costs associated with the January parenting time in Australia.

"c. APRIL PARENTING TIME.

"(1) Petitioner is awarded 7 consecutive days and nights of parenting time in April of each year to be exercised in Australia during the minor child's Easter break.

"* * * * *

"(3) Petitioner shall pay all transportation and travel costs associated with his April parenting time.

"d. OPTIONAL VISITATION IN AUSTRALIA.

"(1) Petitioner shall have the option of visiting the minor child in Australia one additional time per year for seven consecutive days and nights as long as said visitation does not interfere with the minor child's schooling.

"* * * * *

"(3) Petitioner shall pay all transportation and travel costs associated with any optional visitations in Australia."

The judgment also included a provision concerning child's future custody arrangement upon reaching high school:

"The parties recognize and accept that the minor child's preference as to where she wishes to attend high school and establish her principal peer group is highly relevant, and as such shall receive due consideration by the parties when the time comes to determine where her residence should be while she attends high school. Both parties are encouraged to provide the child with information about the alternatives available to her. Although each party may discuss with the child the relative merits of schooling in Australia and in the United States, both parties are enjoined from placing undue pressure on the child to acquiesce [in] their wishes for her."

On appeal, mother argues that the trial court erred because the modification removes child from an entire quarter of school in Australia and is therefore not in child's best interests. Father concedes that the disruption in child's school schedule is not the ideal solution but contends that it is the only arrangement that will provide him with quality parenting time to preserve and further develop his relationship with his child. We agree with mother.

■■ In determining a proper parenting plan, our paramount concern is the best interests of the child. ORS 107.102(4)(b); *Deffenbacher and Deffenbacher*, 168 Or App 331, 336, 5 P3d 1190 (2000); *see* ORS 107.137 (factors considered in determining the best interests of the child). Although we generally review the record *de novo*, where evaluating the parenting plan "depends on weighing evidence and firsthand observation of witnesses, we give weight to the findings of the trial court." *Stringham and Stringham*, 124 Or App 626, 630, 863 P2d 504 (1993).

In this case, the quality of parenting provided by both parents is not in dispute. Both are loving parents dedicated to the best interests of their child. Although mother has

been the sole legal custodian, father has maintained a close relationship with child since the parties separated. Mother's decision to move to Australia should not punish father, child, or the relationship between the two. It is in child's best interests to maintain this close relationship with her father. *See* ORS 107.149 (policy of Oregon to assure minor children of frequent and continuing contact with good parents after separation or divorce). However, the realities of living halfway around the world from one another necessitate a change in the parenting structure. Short, frequent visits by child must now be replaced by longer extended stays. The difficulty lies in determining when and for how long child will stay with father while realizing that any extended stay will result in child missing some amount of school. This problem is exacerbated by the fact that the Australian school system operates on a year-round basis and does not have the same traditional school vacation periods as does the United States. We conclude that the amount of time child spends with her father should not dramatically change but that adjustments to *when* child visits father are necessary.

The trial court acknowledged the difficulty in reaching an acceptable parenting plan and decided to adopt the plan proposed by father. However, the trial court did not explain why father's parenting time during July through October is in child's best interests. Mother presented credible evidence that this disruption to child's education may result in both short- and long-term harms. Colvin testified that this disruption could be "very detrimental" and may even limit child's potential. Father's plans to keep in contact with child's Australian teacher and to provide formal education during the stay are commendable, but they do not address the social effect on child of being separated from her classmates continuously for one quarter of each year. As the teacher testified, a child who falls behind socially tends to neglect academics in order to compensate socially. Therefore, we conclude that father's July to October parenting time is not in child's best interests. Instead, the time missed from school should be spread throughout child's school year. Thus, father's parenting time should include an eight-week period surrounding child's Christmas vacation and a four-week period surrounding one of child's other two-week vacation periods. Father's

argument that parenting during the holiday season is not "quality parenting" time is not persuasive. The potential harm in missing an entire quarter of school outweighs any possible reduction in the quality of parenting time for father.

■    Mother also assigns error to the court's inclusion of language regarding custody once child has reached high school. Mother contends that the language invites future conflicts between the parties and may lead to undue pressure on child. We agree. A dissolution judgment should not include a provision that automatically changes custody on the occurrence of a specified event. *Jacobson and Jacobson*, 84 Or App 704, 708, 735 P2d 627 (1987). To modify custody after sole custody has been awarded to a parent, the moving party must show a substantial change in circumstances and that the change in custody will be in the best interests of the child. *State ex rel Johnson v. Bail*, 325 Or 392, 396-97, 938 P2d 209 (1997).

■    In this case, although the provision is not automatic, it does presuppose that the parties will dispute custody once child has reached high school age. The language also implies that a change in circumstances is automatic once the requisite age has been reached:

> "The parties recognize and accept that the minor child's preference as to where she wishes to attend high school and establish her principal peer group is highly relevant, and as such shall receive due consideration by the parties *when the time comes to determine where her residence should be* while she attends high school."

(Emphasis added.) The language in the provision presents a very real danger of encouraging a custody dispute once child reaches high school. That is not Oregon's policy. The purpose of the substantial change in circumstances rule is to discourage repeated litigation of the same issues and to provide children with a stable home environment. *Greene and Greene*, 107 Or App 338, 341, 812 P2d 11 (1991). Regardless of the language in the provision, the court will not consider a change in the custody of child unless a substantial change in circumstances occurs. Then, and only then, will the court consider any preference child may have and whether a change in

custody would be in her best interests. This provision presents a degree of uncertainty in child's future that is inappropriate. Moreover, simply having the provision in the judgment leads to the possibility that parents and child could use it to influence one another unduly. Therefore, we conclude that the provision should be stricken from the judgment.

Finally, father cross-appeals, claiming that the trial court erred by not dividing the travel expenses under the plan evenly between the parties. Mother argues that it is only fair that father bear the larger burden of travel expenses because he proposed the plan that the trial court adopted and his plan requires more traveling than hers. Given our disposition of mother's first assignment of error, her argument is moot. Child will make only two trips to Oregon annually. Any other traveling must be negotiated between the parties. We conclude that the cost of those trips, including escorts if necessary, should be divided evenly between the parties. Additionally, if father elects to use his designated parenting time in Australia, the parties will divide the cost of father's round-trip ticket annually.

Judgment modified to award father eight weeks of parenting time during child's Christmas vacation and four weeks of parenting time during one of child's other vacations, to delete the provision concerning custody once child reaches high school age, and to divide travel costs equally; otherwise affirmed.