Argued and submitted April 25, affirmed December 14, 2005

# In the Matter of the Marriage of

## Jason Wayne COOKSEY,
*Respondent,*

*and*

## Christy J. COOKSEY,
*Appellant.*

## 02DM0133; A123987

125 P3d 57

Robert S. Hamilton argued the cause for appellant. With him on the briefs was deSchweinitz & Hamilton.

David A. Dorsey argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong, Judge, and Breithaupt, Judge pro tempore.

LANDAU, P. J.

**LANDAU, P. J.**

At issue in this case is whether it is in the best interests of the child to modify a parenting plan to permit mother to move with the child from North Bend to Klamath Falls. The trial court found that it is not in the best interests of the child to permit the relocation. Mother appeals, advancing three assignments of error: (1) the court erred in failing to determine whether the proposed move presented a substantial change of circumstances; (2) the trial court erred in concluding that it is not in the best interests of the child to permit the relocation; and (3) the court's failure to permit the modification of the parenting plan violates her "constitutional rights to travel and selection of abode." We conclude that (1) under ORS 107.102(3)(f), parenting plan modifications expressly are to be based solely on the best interests of the child and require no showing of a substantial change of circumstances; (2) on *de novo* review, ORS 19.415(3), the trial court did not err in finding that it is not in the best interests of the child to permit the relocation; and (3) mother's constitutional contentions are not preserved. We therefore affirm.

In 1998, mother and father married in Klamath Falls. They were 20 years of age. Mother had custody of a four-year-old child from a previous relationship. Mother's extended family resided in the Klamath Falls area, while father's extended family resided in the Coos Bay area. At the time of the marriage, father was working full time as an apprentice plumber. Mother was enrolled at the Oregon Institute of Technology, where she was studying to be an x-ray technician.

In 2000, the parties moved to the Coos Bay area so that mother could begin an externship. Their child, TC, was born in February the following year. Mother completed her bachelor's degree, and, in November 2001, she passed her national registration examination. She then began working full time.

The parties separated in January 2002, and the marriage was dissolved by stipulated judgment of dissolution in July of that year. Under the terms of the judgment, mother was awarded legal custody of TC, and father was awarded

parenting time. The parenting plan detailed in the judgment provided that father was to have parenting time with TC every other weekend from Friday evening to Sunday evening, three hours every other Wednesday evening, and additional time during various holidays and vacation periods.

Sometime in 2003, mother decided that she wanted to move with TC to Klamath Falls "to be close to my family, school friends, church friends, and that is where I was born and raised." She said that, in addition, she wanted to be better able to offer support for her own mother, who had been diagnosed with multiple sclerosis some years earlier and whose quality of life was expected to be adversely affected at some point in the future. Mother informed father of her intentions in August 2003. Father then moved for an order to show cause why he should not be granted sole custody of TC, subject to a revised parenting plan. Mother responded that, although she opposed a change of custody, she did not oppose a change in the parenting plan in light of her planned move to Klamath Falls. The trial court issued a show cause order. In the meantime, father remarried. His current wife has a son and a daughter from a previous marriage; at the time of trial they were, respectively, seven and five years old.

The parties agreed to a custody evaluation. The evaluation was performed by Mazza, a licensed clinical social worker with approximately 13 years of private practice experience performing custody and parenting plan evaluations. Mazza has extensive experience as an expert witness in custody matters and has prepared approximately 140 evaluations. In this case, his evaluation included interviews with and observations of mother, TC, mother's (by then) nine-year-old daughter from the previous relationship, father, father's new wife, and the latter's two children. Mazza also administered various psychological tests to the parties, reviewed the parties' answers to written questions, and contacted references provided by the parties. We discuss the details of the evaluation when we reach the testimony adduced at trial. At this juncture, suffice it to say that Mazza concluded that it is in the best interests of the child for the *status quo* to be maintained, that is, that mother should retain custody of TC, but that she also should not move with TC to Klamath Falls. In response to the evaluation, father

withdrew his motion for a change of custody, and the case proceeded to trial on the sole question whether it is in the best interests of the child to move with mother to Klamath Falls.

Mother testified at trial that she grew up in Klamath Falls and that, when she was choosing locations for her externship, she requested Klamath Falls but was unable to obtain a position there. She testified that she wanted to move back to Klamath Falls because her mother's health was failing. She explained that her desire to move was not based on any objection to or dissatisfaction with father's current parenting time. Mother testified that she had enrolled her daughter in school there and had sold her residence in the Coos Bay area. Mother agreed that, if she were permitted to move to Klamath Falls, father could have TC for one week per month or every other week from Thursday through Sunday, as well as for other occasions such as school events. She also agreed to cooperate in transporting TC for his visits, including meeting father halfway between Coos Bay and Klamath Falls. Nothing in mother's testimony, however, addressed how she thought the move would affect TC or how she thought the move would be better for the child. Likewise, she offered no testimony as to how the proposed move would affect her own parenting, whether she thought that the move would enable her to offer better care for TC, or whether remaining in North Bend would in some way adversely affect her ability to care for the child.

As pertinent here, father testified regarding TC's activities during visits to father's home and TC's relationship with father's new wife, stepchildren, and extended family members. He also testified regarding his own experiences of having an absent father while growing up. Father testified that having to travel to Klamath Falls to pick up TC on Thursday nights would have a negative impact on his employment.

The parties stipulated to the admission of Mazza's evaluation. In relevant part, Mazza's report stated that mother and father are

"two biological parents living in close proximity to each other, co-parenting their child successfully during a challenging time in their lives. The parents are decent people who love and cherish [TC] very much. No data resulting from this investigation militate strongly against either parent * * *. Each parent has adequate resources both financial and psychological. In terms of those factors which relate to the likely future happiness of [TC] such as security, stability, continuity of care, love, family unity, tolerance, and ultimately, support of independence, these parents are currently providing what could be considered stable circumstances for [TC] while in the midst of difficult legal proceedings.

"* * * * *

"Both parents have demonstrated a strong commitment to help [TC] grow up physically and emotionally healthy. They have provided a continuity of relationship that is both warm and nurturing. They have provided opportunities for the development of individuality and facilitated social and emotional competence in [TC].

"[Father] demonstrates a number of qualities that would make a good parent. He possesses an ongoing relationship and continuity of involvement with his son from infancy onward, and demonstrated his motivation and ability to provide physical care, guidance, and affection. While he has been clearly less involved than mother in the day to day upbringing of the child, he has nonetheless been actively involved in [TC's] care, contributed much to his successful upbringing thus far, and is a central part of his life. The data also indicate that [TC] has the capacity to utilize and positively profit from the combination of characteristics father has to offer. The bond that exists between father and [TC] speaks strongly for the importance of maintaining the continuity of their relationship which is valuable to each of them. Maintaining this relationship in a healthy context will be important to [TC's] psychological development.

"While both parents have a deep psychological bond with [TC], the data indicate that [mother] has established her role as the primary parent to the child. She has demonstrated a consistent nurturing history with [TC]."

As we have noted, Mazza's report included a recommendation that custody of TC remain with mother. Mazza's report,

however, concluded that that recommendation should not suggest that relocation to Klamath Falls is in TC's best interest:

> "In this particular case it would be an error for the child's relocation to be solely predicated upon or automatically follow from an award of custody. The interests of the child would be better served if the custody and relocation issues are explored as distinct variables deserving of discrete consideration and judgment.

> "[TC] clearly needs his mother at this point in his life and she emerges as the best candidate for primary custodian yet she has expressed a strong commitment to relocate the child, an act that would diminish the opportunities available to him and eclipse his best interests."

Mazza's report noted that mother's primary reason for wanting to return to Klamath Falls was to "return to a supportive family of origin and other support networks" in that city and, secondarily, to assist her mother. The report questioned "whether mother's purpose for moving is substantially achievable without moving," however.

Mazza's report noted the possibility that not permitting mother to relocate could cause her to be a less effective parent in the Coos Bay area. It nevertheless concluded that "the data do not suggest that [mother] would be psychologically impaired if she were unable to relocate at this time."

In addition, Mazza's report considered the possibility that a move to Klamath Falls would be better for TC. The report concluded, however, that "[t]he data do not support that there would be a substantial improvement in the overall quality of life for [TC] with such a move." To the contrary, Mazza's report concluded:

> "The data indicate the impetus for [mother's] move is more closely related to her own interests than to the best interests of [TC]. A strong, consistent theme running through the literature on divorce and child custody emphasizes that the best interests of children are served by parenting time plans and custody arrangements that promote frequent and continuous contact with both parents. Mother's rationale for moving does not rise to a level of significance which would outweigh the costs to [TC] of compromising a close,

healthy relationship he currently has with his father where he experiences and benefits from father's ongoing involvement in the child's life. A move of this magnitude runs counter to a parenting time plan that promotes a close and continuing relationship with both parents, particularly as [TC] moves into subsequent developmental stages where educational, social and recreational activities become increasingly important. With a move, [TC] would potentially be required to travel a minimum of nine hours over the course of father's every other weekend parenting time. Mother stated, 'although the travel time may be long, it would be the same as if [father] had custody and I lived in Klamath Falls. I understand that it would be ideal if both of us stayed in the same town, but I don't think the traveling time is detrimental to [TC].' In addition, the data suggest that the child has established ties in the Coos Bay/North Bend area with a variety of family members. A distant move would significantly reduce [TC's] exposure to the resources found in father's kinship system."

Mazza also testified at trial. He explained that a child's development is enhanced by a "close and continuing" relationship with both parents. He also testified that he believed that, for younger children, more frequent visits— such as midweek visits rather than visits of one week per month—are especially important. Mazza characterized the bond between father and TC as an "above-average, positive emotional bond" and testified that TC has a "significant" emotional bond with father that "needs to be maintained. That's important for him." Mazza testified that the extent of a child's integration into a noncustodial parent's home could be indicative of the impact that relocation might have on the child and that TC's integration into father's home and family—for example in respect to toys, clothing, and other items maintained there for his visits— was "above average." However, he also testified that, although it was "preferable" that mother remain in the North Bend area, it was "not a wide margin" and that, if mother and TC moved to Klamath Falls, TC was "not going to be psychologically harmed." Finally, as pertinent here, Mazza opined that mother's plan to move reflected her own needs more than those of TC.

The trial court found that it is not in TC's best interest to move to Klamath Falls and ordered mother not to relocate the child. In a detailed, six-page, single-spaced letter

opinion, the court explained the basis for its decision. The court noted that, among other things, it was "very impressed with the evaluation done by Mazza. It was very comprehensive and thoughtful. The court finds both his report and his testimony credible." The court noted that it was particularly impressed with descriptions from all witnesses regarding father's relationship with TC; the court found that "father has a very strong bond with the child and has developed the bond because he has been and is an involved and good father."

As we have noted, mother advances three assignments of error on appeal. Her first assignment is that the trial court erred in evaluating whether it is in the best interests of TC to move to Klamath Falls without first determining that there has been a substantial change in circumstances. Father responds that the change of circumstances "rule" applies to determinations whether to change custody, but not to parenting plans. According to father, under ORS 107.101 and ORS 107.102, the ability of a parent to relocate is an aspect of a parenting plan, the standard for which is the best interests of the child. ORS 107.101(5); ORS 107.102(3)(f), (4)(b).

Father is correct. ORS 107.102 provides that, in any proceeding to modify a judgment providing for parenting time, there must be developed and filed with the court a general or detailed parenting plan. A "detailed" parenting plan may include, among other things, provisions relating to residential schedules; holiday, birthday, and vacation schedules; and "relocation of parents." ORS 107.102(3)(f). The parties can agree to such a detailed parenting plan, or the court may be called upon to develop one if requested by the parties or if the parties are unable to agree. ORS 107.102(4). In developing such a parenting plan—which expressly includes provisions relating to the relocation of parents "the court may consider *only* the best interests of the child and the safety of the parties." ORS 107.102(4)(b) (emphasis added).

Thus, a party who seeks to prevent a custodial parent from relocating—thereby necessitating a change in the applicable parenting plan—without seeking a change in custody of the child need not demonstrate that there has been a

substantial change in circumstances since entry of the original judgment. *See Cole v. Wyatt,* 201 Or App 1, 7, 116 P3d 919 (2005) ("[T]he modification of parenting time does not require a showing of a substantial change in circumstances."); *Meader and Meader,* 194 Or App 31, 45, 94 P3d 123, *rev den,* 337 Or 555 (2004 ) ("Our case law establishes that changes in visitation between parents are governed by an assessment of the best interests of the child, without requiring a showing of change of circumstances."(Emphasis omitted.)); *see also Smith and Smith,* 290 Or 567, 571, 624 P2d 114 (1981) (same); *Compton and Compton,* 177 Or App 68, 74, 33 P3d 369 (2001) (same). The trial court did not err.

Mother's second assignment of error is that the trial court erred in evaluating the best interests of the child, TC. It bears noting that mother's argument does not actually address whether, in fact, it is in the best interests of TC to move to Klamath Falls. Instead, mother's argument is that parents should be permitted to relocate unless the opposing party has established that relocation would be harmful to the child. As mother states in her brief: "Our society in Oregon, as well as the entire nation, is an increasingly mobile society. The courts, including Oregon courts, have generally allowed moves by the custodial parent unless detriment to the child can be proven."

Father responds, in effect, that mother's entire argument proceeds from a false premise, namely, that the law permits custodial parents to take children where they please in the absence of proof that moving would actually harm the children. According to father, while that certainly is the law in some—a minority—of states, it is not the law in Oregon. Citing ORS 107.102(4)(c) and *Willey and Willey,* 155 Or App 352, 963 P2d 141 (1998), among other cases, father contends that the law in Oregon is that relocation is authorized only when it is shown that such a move is better for the child than the *status quo.* Father argues that there is, as the trial court found, no evidence that moving TC to Klamath Falls is better for the child than remaining in the Coos Bay area.

We begin with an examination of the relevant legal principles. A custodial parent does not have the authority unilaterally to relocate with a child more than 60 miles away

from the noncustodial parent. ORS 107.159(1) provides that dissolution judgments must include "a provision requiring that neither parent may move to a residence more than 60 miles further distant from the other parent without giving the other parent reasonable notice of the change of residence and providing a copy of such notice to the court." That notice enables the noncustodial parent to obtain a *"status quo"* order under ORS 107.138 pending a hearing on whether the court should approve the relocation.

As we have noted, under ORS 107.102(4)(b), when a trial court is charged with determining whether to approve a relocation, "the court may consider only the best interests of the child and the safety of the parties." In this case, there appears to be no issue concerning the safety of any party; the sole matter in dispute is whether it is in TC's best interests to move with mother to Klamath Falls.

ORS 107.137 lists various factors that the court must consider in determining the best interests of a child in custody cases. We know of no reason why those same factors would not be relevant to a determination of the best interests of a child in a case involving relocation only. *See Compton*, 177 Or App at 74 (citing ORS 107.137 factors in evaluating dispute over relocation of child). Among the factors listed in the statute are the emotional ties between the child and other family members, the interest of the parties in and attitude toward the child, the desirability of continuing an existing relationship, the preference for the primary caregiver of the child, and the willingness and ability of each parent to facilitate a close and continuing relationship between the other parent and the child. ORS 107.137(1).

Also relevant is the legislative injunction that in establishing a parenting plan, the court "shall recognize the value of close contact with both parents and encourage, when practicable, joint responsibility for the welfare of [the] children and extensive contact between the minor children of the divided marriage and the parties." ORS 107.105(1)(b); *see also Cole*, 201 Or App at 8 ("Generally, courts attempt to promote a strong relationship between children and their noncustodial parents."); *Sundberg and Sundberg*, 150 Or App

349, 355, 946 P2d 296 (1997), *rev den*, 326 Or 464 (1998) (same).

A number of decisions of the Supreme Court and our own court have applied the "best interests of the child" standard in the context of relocation disputes, and a review of those decisions may serve to give helpful content to its demands. *Meier and Meier*, 286 Or 437, 595 P2d 474 (1979), is usually regarded as the starting point for a discussion of the issue, and, because it established several analytical benchmarks that continue to be employed to this day, we devote some detailed attention to the decision.

In *Meier*, the mother had been awarded custody of the parties' child. She moved for a modification of the dissolution judgment allowing her to take the child with her to Ontario, Canada. The mother explained to the court that job opportunities in Oregon were limited in her particular field and that she had been offered a lucrative position in Ontario. The mother had strong family ties in Canada and felt that the influence of her extended family would be beneficial for the child. She explained that the child had a reading disability and that special tutoring would be available in Ontario. *Id.* at 439-41. The father opposed the motion, contending that he and the child had a very good and warm relationship that would be adversely affected by the proposed relocation. *Id.* at 441. The trial court granted the mother's motion, and the father appealed. *Id.* at 441-42.

This court affirmed, holding that custodial parents should be permitted to relocate with their children as they choose, so long as the relocation poses no danger to the children. In that particular case, we explained, "This child is capable of adjustment and Canada is a civilized nation in which it appears from afar that children are able to live wholesome lives. The prospective move poses no danger to the health or safety of the child which requires judicial anticipation." *Meier and Meier*, 36 Or App 685, 690, 585 P2d 713 (1978).

The Supreme Court reversed. The court began by declaring that, in determining whether a parent may relocate with a child outside of the state, the "paramount consideration" is "the best interests of the *child.*" *Meier*, 286 Or at 445

(emphasis in original). The court then elaborated that "[i]t is also well-settled in Oregon that in making the determination of the best interests of the child, the trial judge is in a far better position to weigh the various factors which enter into the problem, and his [or her] decision should not lightly be disturbed by a court on appeal." *Id.* at 446. Quoting an earlier decision, *Perley and Perley*, 220 Or 399, 401, 349 P2d 663 (1960), the court stated that the decision of a trial court in such cases, " 'when tested by appeal, comes here weighted with the presumption that the court has properly exercised its judicial discretion in determining what is for the best interest of the child.' " *Meier*, 286 Or at 446.

Turning to the decision of this court, the Supreme Court concluded that we had erred by applying the wrong standard. The court explained that our opinion had inappropriately focused on the "right" (the Supreme Court's quotation marks) of a custodial parent to move, when we should have focused on whether the move was best for the child. "The Court of Appeals," the court observed, "did not make a determination that the interests of the child would be *better* served by permitting his removal to Canada than by refusing permission for such a move." *Id.* at 447-48 (emphasis in original). In so doing, the court held, we had "misse[d] the mark." *Id.* at 448.

Two years later, in *Smith and Smith*, 290 Or 567, 624 P2d 114 (1981), the Supreme Court confronted another relocation dispute. In that case, the trial court had determined that the mother's request to relocate the children to California was not in the children's best interests. The court had concluded that, although the mother had done "an excellent job with the children," they were also doing well with the father during his parenting times. *Id.* at 571. A custody evaluator had recommended against the move. *Id.* at 571-72. The mother appealed, and we affirmed without opinion. The Supreme Court affirmed. Its analysis, in its entirety, is as follows: "[W]hen we hear a case upon petition from review from the Court of Appeals we regard the decision of the trial court on the issue of what is in the best interests of the child as highly persuasive. We, therefore, affirm the decision of the Court of Appeals." *Id.* at 572 (citation omitted).

In *Willey*, we relied on the foregoing case law in determining whether it was in the best interests of the child to move with the mother to Massachusetts. The mother had been awarded custody of the child. Before the dissolution judgment had been signed, however, the mother informed the father that she wished to move with the child to the East Coast. The trial court entered a supplemental judgment restraining the mother from taking the child out of state. On appeal, the mother argued that the trial court had erred in imposing the restriction. *Willey*, 155 Or App at 354.

Citing *Meier*, we stated that the controlling inquiry is whether the move to Massachusetts was in the best interests of the child. *Willey*, 155 Or App at 354. We then explained:

"Determining whether to impose a restriction is addressed to the sound discretion of the trial court.

"On our *de novo* review, we do not disturb the court's determination here that the restriction is in the child's best interest. At trial, wife took the position that her daughter would benefit from living near her extended family in Massachusetts, but we agree with the trial court that wife's family could not replace the important contact that child has with husband. We need not detail the evidence that demonstrates that husband has been actively involved in the care of his daughter and is a central part of her life. The testimony of the examining professionals showed that [the child] is equally attached to both parents and needs frequent contact with each. Wife does not demonstrate how the child's best interests are served by her plans for the move[.]"

*Id.* at 354-55 (citations omitted).

Notwithstanding the rather broad and deferential language of the cases, we do not simply rubber-stamp trial court decisions as to the best interests of the child in relocation cases. In *Colson and Peil*, 183 Or App 12, 51 P3d 607 (2002), we reversed a trial court's decision to modify custody from the custodial parent, who desired to move with the children to Missouri, to the noncustodial parent, who desired to remain in Oregon. We concluded that the trial court had erred because the move had been contemplated at the time of

the original dissolution and was not an *unanticipated* change in circumstances. *Id.* at 22. Albeit in *dictum*, we added that, even if the proposed move had constituted a change in circumstances, we would have concluded that the move was in the best interests of the children. *Id.* at 24. The record in that case demonstrated that both children would benefit from the move and, in particular, that school programs in Missouri would better meet the special needs and interests of the children than programs in Oregon. The son, for example, had a learning disability and was faring poorly in Oregon; his teacher acknowledged that he needed a "change in academic focus" and that a new environment might be beneficial. Likewise, the daughter had a special interest in ballet, which the record showed could be better fostered in Missouri. The record further demonstrated that the mother had a strong support network in Missouri, that the father's own family lived there as well, and that the father was willing, although reluctant, to move to Missouri. *Id.* at 23.

More recently, in *Hamilton-Waller and Waller*, 202 Or App 498, 123 P3d 310 (2005), we reversed a decision of the trial court that, if the mother moved with her fiancé to Holland, custody of the children would be awarded to the father in Oregon. We explained that, for several reasons, we differed with the trial court's conclusion that it was in the best interests of the children to remain in Oregon with the father. To begin with, we emphasized that the children had special needs and that the mother had considerable experience as the primary caregiver in meeting those needs. There was a troubling lack of evidence, we noted, that the father could meet those needs; if anything, we observed, the record suggested that the father had had "poor follow-through" in dealing with the children's needs. 202 Or App at 513-17. In addition, we noted that the record suggested that the mother's ability to care for the children would be enhanced by the move and that enhanced educational opportunities in Holland would benefit both of the children. *Id.* at 518. Finally, we explained that the custody evaluator who had recommended against the move to Holland was relatively inexperienced, having conducted custody evaluations for only five months at that time, and that her conclusions were based on a relatively limited exposure to the family. *Id.* at 520-21.

■ From the foregoing case law, we take the following guidelines. First, the focus is solely on the best interests of the children. More specifically—as the *Meier*, *Smith*, and *Willey* decisions make explicit—the focus is on the question whether the children are "*better* served" by relocating. *Meier*, 286 Or at 447-48 (emphasis in original). Thus, we reject mother's contention that the law permits her to move the children unless there is evidence that doing so will harm the children. Mother's argument, in fact, is precisely what we held in *Meier*—and precisely what, in reversing our decision, the Supreme Court said had "misse[d] the mark." *Meier*, 286 Or at 448.

Second, in evaluating the best interests of the children, we examine the factors identified in ORS 107.137(1), along with the legislative directive to promote strong relationships between children and their noncustodial parents. *Cole*, 201 Or App at 8.

■ Third, we review the trial court's best interests determinations *de novo*. ORS 19.415(3). There is, to be sure, some very strong phrasing in the cases concerning the "discretion" of trial courts to make such determinations. *See, e.g.*, *Meier*, 286 Or at 446 (relocation decisions are "weighted with the presumption that the court has properly exercised its judicial discretion in determining what is for the best interest of the child"); *Willey*, 155 Or App at 355 ("Determining whether to impose a [relocation] restriction is addressed to the sound discretion of the trial court."). Giving such phrasing literal import, however, cannot be reconciled with the statute that controls our standard of review. Instead, we understand the case law to reflect the well-settled principle that, in reviewing trial court decisions that so often involve considerations of credibility and demeanor, we do so cautiously, reversing only for clearly articulable reasons.

■ With those principles in mind, we return to the record in this case. That record shows that both parents are loving and intimately involved with the care and upbringing of the child. Mother is indeed the "primary caregiver" but, as the custody evaluator reported and the trial court also found, father is especially close to TC and has been continuously involved with the child's upbringing from infancy onward.

Mazza also testified that, particularly at TC's age, it is important for his close relationship with his father to continue uninterrupted. Mazza expressed special concern with the loss of mid-week parenting time that would result from the proposed move to Klamath Falls. To be sure, Klamath Falls is not a great distance from North Bend. But, as father and Mazza testified, it is far enough away to significantly—and adversely—alter the nature of father's contacts and, hence, his relationship with TC.

Perhaps most important, as Mazza testified, there is a complete absence of evidence that the move to Klamath Falls would benefit TC in any way. Unlike the circumstances in *Colson* and *Hamilton-Waller*—where the records affirmatively demonstrated that the proposed moves would benefit the children—in this case there is nothing at all about the effect on TC of relocating to Klamath Falls or about the effect that the proposed move would have on mother's ability to care for him. The record shows only that mother wishes to move to Klamath Falls so that she can be closer to her family.

In that regard, the facts of this case are materially indistinguishable from those in *Willey*. As we noted, in that case, both parents were loving and actively involved in the upbringing of their child. The child, in turn, was closely attached to both parents. The mother wished to relocate to be close to her own family. The father objected that the move would adversely affect his relationship with the child. We concluded that there was no evidence showing that the child would actually benefit from the proposed move and, on that ground, affirmed the trial court's decision to restrain mother from relocating with the child. 155 Or App at 355 ("Wife does not demonstrate how the child's best interests are served by her plans for the move[.]").

Again, in this case as well, both parents are loving and actively involved in the upbringing of the child, and the child is closely attached to both parents. Mother wishes to move to Klamath Falls to be close to her own family, but father objects that such a move would adversely affect his relationship with the child. Mother offers no testimony as to how the proposed move will benefit TC or how it will improve her ability to care for him. Under the circumstances, just as

in *Willey*, we cannot say in this case that the trial court erred in concluding that the mother simply did not demonstrate that it is in the best interests of the child to move to Klamath Falls.

■       Mother's final assignment of error is that prohibiting her from moving to Klamath Falls with her child violates her constitutional rights to travel and select a home, which she contends are protected by the Fifth and Fourteenth Amendments to the United States Constitution. Mother, however, did not advance that argument to the trial court, and we will not entertain it for the first time on appeal.

Affirmed.