Argued and submitted January 16, judgment vacated and remanded October 1, 1997, petition for review denied February 10, 1998 (326 Or 464)

In the Matter of the Marriage of

Kathryn Jane SUNDBERG,
nka Kathryn Jane Conner,
*Respondent,*

*and*

Roger Alan SUNDBERG,
*Appellant.*

(15-89-03445; CA A92983)

946 P2d 296

Carol K. Chatwick argued the cause and filed the brief for appellant.

Stephen J.R. Shepard argued the cause for respondent. With him on the brief was DePaolis & Shepard.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Father appeals from a judgment ordering three hours of supervised visitation every other weekend with his daughter. On *de novo* review, ORS 19.125(3), we vacate and remand.

In 1988, father and mother, who were married at the time, had a child. By the time the child was six months old, they had separated. In 1989, mother secured a dissolution judgment by default. The judgment awarded mother custody of the child and denied father any right to visitation. Father did not appeal the judgment. During the next four years, father, representing himself, made several unsuccessful attempts to have the judgment modified to allow visitation with the child. Finally, in 1994, the trial court modified the judgment to permit father to have supervised visits with his daughter, but it explicitly denied him the rights specified by ORS 107.154 and ORS 107.164.[1]

In reaching its decision, the trial court stated that it was "without convincing evidence pertaining to [father's]

---

[1] ORS 107.154 provides:

"Unless otherwise ordered by the court, an order of sole custody to one parent shall not deprive the other parent of the following authority:

"(1) To inspect and receive school records and to consult with school staff concerning the child's welfare and education, to the same extent as the custodial parent may inspect and receive such records and consult with such staff;

"(2) To inspect and receive governmental agency and law enforcement records concerning the child to the same extent as the custodial parent may inspect and receive such records;

"(3) To consult with any person who may provide care or treatment for the child and to inspect and receive the child's medical, dental and psychological records, to the same extent as the custodial parent may consult with such person and inspect and receive such records;

"(4) To authorize emergency medical, dental, psychological, psychiatric or other health care for the child if the custodial parent is, for practical purposes, unavailable; or

"(5) To apply to be the child's conservator, guardian ad litem or both."

ORS 107.164 provides:

"Unless otherwise ordered by the court, both parents shall have a continuing responsibility, once a custody or protective order concerning the child is issued, to provide addresses and contact telephone numbers to the other parent and to immediately notify the other parent of any emergency circumstances or substantial changes in the health of the child."

*present* ability to act in the best interest of the parties' child." (Emphasis in original.) It had no information about father's "employment, his home circumstances or his current psychological condition." The trial court made the following findings:

"1.   [Father] has consistently demonstrated an interest in maintaining contact with the child over the past five years.

"2.   There is no evidence that [father] is likely to harm the child except a five year old suspicion based on unusual behavior.

"3.   There is currently no existing relationship between [the] child and father.

"4.   Due to the findings above, supervised visitation is appropriate at this time."

The judgment also stated,

"At any time after December, 1994, [father] may file a further motion and order to show cause seeking unsupervised visitation with the child.

"Said motion and order shall be accompanied by sworn affidavits from: a) the visitation supervisor stating that all supervised visitation has been conducted satisfactorily without any conduct on the part of [father] which is detrimental to the child; and b) an Oregon State licensed psychologist or psychiatrist who has examined and counseled with [father], stating to the effect that to the best of his/her ability and opinion, [father] suffers from no emotional or psychological condition rendering him unfit for unsupervised visitation with the parties' minor child. Said affidavits shall constitute a substantial change of circumstances and the court shall proceed to determine whether a change in visitation conditions [is] in the best interests of the child."

Father did not appeal the judgment and began having supervised visits with the child.

In 1995, father moved to have the visitation judgment modified to allow him to have unsupervised visits with the child and to grant him the rights specified in ORS 107.154 and ORS 107.164. As required by the court, father

attached an affidavit from the person who supervised the visits. It stated:

"All supervised visitation held at Family Resources, Eugene, Oregon between [father] and [the child] has been conducted satisfactorily without any conduct on the part of [father] which is detrimental to the child."

Father also attached an affidavit from a psychologist who had performed a psychological evaluation of him. The psychologist concluded that there was no reason why father should not have unsupervised visitation with his daughter. The affidavit stated that he had conducted an evaluation of father that consisted of "a clinical interview, and psychological testing of intellectual abilities, as well as of personality functioning."

"From the point of view of [father's] personal characteristics, I can state clearly that I do not find evidence of any psychological factors which would prevent him from being able to exercise responsibly and appropriately the role of a non-custodial parent in the course of normal visitation with his child. I do see him as able to responsibly fulfill the role of non-custodial parent and he does demonstrate an accurate and appropriate appreciation of how important it is for a child to have a positive relationship with both his parents and how detrimental it is for either parent to be critical and rejecting of the other.

"In summation, as a result of my evaluation I can state that I believe [father] is emotionally and psychologically able to have a normal parent-child relationship with his daughter and there are no indications that he is unfit to have unsupervised visitation."

At the hearing, the psychiatrist acknowledged that there was evidence that suggested that father might have been unstable in the past, but he maintained that at present father could handle the responsibilities of a noncustodial parent.

Father also presented evidence at the hearing that demonstrated that his employment status and home circumstances were conducive to having unsupervised visitation. He testified that he had secured a full-time job as a custodian. In preparation for unsupervised visits, he had rented a

two-bedroom apartment and had decorated one of the bedrooms for his daughter. He said that children of all ages live in the apartment complex where he lives and that there are several parks nearby where the child could play. Further, father had successfully completed a community college course in effective parenting.

Finally, father presented evidence that both he and the child enjoyed getting to see each other during the supervised visits. He testified that although the child was usually "standoffish" at the beginning of each visit, as the visit continued she would relax and they would have a good time with each other. They played games, talked and seemed to get along naturally. The notes and testimony of the people who supervised the visits support father's assessment of them.

In response, mother argued that father should not have any visitation because, although the child seemed to enjoy the visits, they were not in her best interest. Mother testified that, in the days immediately before and after a visit, the child "acted out." She would get very angry with mother for no reason, would throw temper tantrums in private and in public and was incontinent nearly every night. Mother, who was already anxious about the child visiting father because of his bizarre behavior in the past, became even more concerned and anxious. The child's counselor, whom the child had begun to see immediately before her first visit with father, agreed with mother that the visits created a lot of tension and anxiety in the child's life.

After several visits, the child, sometimes directly and sometimes through mother, began to cancel visits with father.[2] In early 1995, the visits were suspended completely. Mother testified that during the suspension the child seemed more relaxed and "less conflicted." In August 1995, when the visits resumed, the child again began to "act out." The child's counselor acknowledged that part of the child's anxiety was a reaction to mother's anxiety about the visits. Still, she recommended stopping visitation between father and the child for now because, "given [the child's] level of underlying fear

---

[2] The center that supervised the visits has a policy against forcing a child to attend a visit if he or she does not wish to attend. Father respected that policy.

and anxiety," it would be difficult for the child to establish a normal relationship with father. After the hearing, the trial court continued the supervised visitation.[3] Father appeals.

■■  In determining whether visitation by a noncustodial parent is appropriate, our paramount concern is with the best interests of the child. *Cohen and Cohen*, 89 Or App 12, 15, 747 P2d 363 (1987), *rev den* 305 Or 331 (1988). Visitation may be denied if the visits adversely affect the child. *Id*. In this case, the visits with father have made the child anxious and tense. Therefore, mother argues, visitation is not in her best interest and should be discontinued. We disagree.

■  The child's anxiety is understandable. Before the supervised visits began, father and the child had not seen each other for at least five and a half years. The child was six years old and had no memories of her father. Her mother, who has a very close and healthy relationship with the child, did not want the visits to occur and was anxious about them. The counselor attributed part of the child's anxiety to the child's awareness of her mother's anxiety. Both experts testified that children dealing with conflict and new situations often "act out" in the manner that the child did here. That the child is anxious and tense about reintroducing her father into her life, however, does not mean that it is not in her best interest to do so. She has two parents who love her and want to spend time with her. There is evidence that she seems to enjoy the time she spends with father. We conclude that, even though it creates some anxiety, it is in the child's best interest to continue to visit her father.

■  Also, we conclude that the visits should be unsupervised. Generally, courts attempt to promote a strong relationship between children and their noncustodial parents. *Kilpatrick and Kilpatrick*, 38 Or App 159, 161, 589 P2d 1153 (1979); *see also* ORS 107.149. In this case, father has shown that he is psychologically prepared to be a noncustodial parent and that he has taken steps to ensure that he is also practically prepared. There is no evidence that his visits need to

---

[3] The judgment did not address father's rights under ORS 107.154 and ORS 107.164. Because the 1994 judgment said that those rights were suspended until the court ordered otherwise, the judgment effectively denied father's motion to have those rights reinstated.

be supervised to protect the child from him. Nor is there any evidence that the supervision reduces the child's anxiety about the visitation. There is evidence, however, that father has had a difficult time consistently seeing the child on the supervised visitation schedule and that the "sterile" environment created by the supervision limits the communication between father and the child. Father and the child have established the beginnings of a father-daughter relationship during the supervised visitation, and, in order for that relationship to develop, father needs to have unsupervised visitation with the child.

Therefore, we conclude that father should have unsupervised visitation with the child. However, because of the child's anxiety about visiting father, we conclude that the court should schedule shorter unsupervised visits that will gradually increase as the child gets to know father and becomes more comfortable with him. Given our disposition, it is appropriate to reinstate father's statutory rights under ORS 107.154 and ORS 107.164.

Judgment vacated and remanded for entry of a modified judgment ordering a schedule of increasing unsupervised visitation, leading to appropriate overnight holiday and vacation visitation and reinstating father's statutory rights under ORS 107.154 and ORS 107.164. Costs to father.