Argued and submitted January 14, affirmed August 3, 2005

# John William COLE,
*Appellant,*

*v.*

# Karen Kay WYATT,
*Respondent.*

## 92-F-0037; A121616

116 P3d 919

Elaine D. Smith-Koop argued the cause for appellant. With her on the briefs was The Law Office of Elaine D. Smith-Koop.

Clayton C. Patrick argued the cause and filed the brief for respondent. Deborah K. Cumming filed the supplemental brief.

Before Edmonds, Presiding Judge, and Wollheim* and Schuman, Judges.

EDMONDS, P. J.

---

* Wollheim, J., *vice* Richardson, S. J.

## EDMONDS, P. J.

Father appeals an order denying his motion to modify a paternity judgment to provide for supervised parenting time with his child. ORS 107.135(1)(a).[1] On *de novo* review, ORS 19.415 (2001),[2] we affirm.

Mother and father have a son, S, who was born in 1990. Mother and father were never married. In 1993, father brought a petition to establish paternity and custody. ORS 109.103. Father did not appear at the hearing. However, mother presented evidence of father's abusive behavior toward his other children, as well as toward mother, another former girlfriend, and his former wife. According to the evidence, father has two daughters and a son from an earlier marriage. Also, father's daughter, J, submitted testimony by affidavit alleging that father had physically, sexually, and verbally abused her and her siblings.[3] She averred that, in addition to observing father physically abuse mother, she observed father physically and verbally abuse the children of his former girlfriend and molest the family's babysitter. Additionally, father's former girlfriend, his former wife, and mother submitted affidavits alleging that father had physically abused them during their relationships with him.

The trial court ruled that father was S's parent but denied father parenting time. ORS 107.105(1)(b). Specifically, the trial court found that father

> "is not a fit and proper person to have custody of the child and that in fact [*father*] *poses an absolute, unconditional, serious and imminent danger to the child's physical and emotional well being,* both directly and through the emotional upheaval he could cause if in contact with the child's

---

[1] Under earlier versions of ORS chapter 107, "parenting time" was termed "visitation."

[2] ORS 19.415 (2001) was amended by Oregon Laws 2003, chapter 576, section 88.

[3] J was approximately 19 years old at the time of the hearing. Also in 1992, mother, J, father's ex-girlfriend, and father's son's girlfriend filed a civil action against father for assault, battery, sexual abuse, false imprisonment, and breach of contract. In the amended complaint, J alleged that father had regularly physically, verbally, and sexually abused her. Additionally, in 1989, J obtained a restraining order against father.

mother * * *, or the child's peers, playmates or school, even if such contact was supervised."

(Emphasis added.) The trial court also granted full custody to mother and prohibited father from any contact with S or mother. Further, it ordered father to undergo a complete psychological examination before seeking future modifications of parenting time.[4] Additionally, the judgment prohibited father from having contact with mother or S. Father did not appeal the 1993 judgment.

Between 1993 and 2002, father did not seek modification of the judgment. On occasion, he sent gifts to S and he showed up at a birthday party for S in violation of the 1993 judgment. In 2002, father filed the motion that is the subject of this appeal, contending that it is in S's best interests to allow parenting time. The hearing on father's motion was held in 2003.

In support of his motion, father alleged that he did not present a risk to the health or safety of S. He presented evidence of his psychological evaluation performed by Dr. Knapp in July 2002, as well as testimony by J recanting her earlier sworn statements regarding father's abusive behavior. He also offered evidence that he has a constructive relationship with his 11-year-old step-granddaughter. Additionally, father testified that, at the time of the 1993 hearing, he was out of town on business and was unaware of the time and place of the hearing and that, had he attended the 1993 hearing, he would have denied the allegations of abuse.

In his psychological evaluation of father, Knapp administered an intelligence test, a personality test, and a child abuse inventory. He also interviewed J and reviewed background information regarding the 1993 proceeding, including affidavits demonstrating a pattern of abusive behavior. In his report regarding the evaluation, Knapp determined that father "does not appear to be suffering from

---

[4] The trial court ordered that

"any future motion by [father] for a modification, rehearing, or other determination involving his rights to custody or visitation concerning [child, shall] be accompanied with a full psychological evaluation of [father], prepared at his expense, and * * * this evaluation shall be submitted to the court in advance of him being permitted any hearing on any of these matters[.]"

significant psychological difficulties at this time." He concluded that "there was no indication in the testing that [father] is an abusive or overly angry individual who is inclined to be emotionally explosive." However, Knapp did not evaluate S or make any assessment of whether S's best interests would be served by contact with father. Knapp explained in his report:

> "*I did not evaluate* [S] *and can make no judgment as to what is in his best interests at this time.* Nevertheless, I do not believe that [father] presents any physical abuse risk to [S] and he also assured me that he has no intention of providing [S] with information about his mother that would place her in a negative light.

> "Based on [father's] test results, interview behavior, and all the background information I reviewed, I would recommend that [father] be considered a safe prospect for having visitation with his son, [S]."

(Emphasis added.) Knapp also recommended parenting time beginning with counseling for father and S. Nonetheless, Knapp testified that, if J's allegations of abuse were true, it would "cause [him] concern[.]"[5] Although he said that J's allegations of abuse worried him and caused him to question J's veracity, Knapp concluded that, based on the information available to him, he "could not see any reason why [father] should not have a visitation with [S]."

The trial court ruled that it was unnecessary for S to testify at the modification hearing but permitted mother to provide an overview as to what she believed to be S's testimony.[6] Mother testified:

---

[5] On cross-examination, Knapp was asked if his opinion would be different if the allegations of abuse were substantiated:

"Q. * * * [W]ould it [a]ffect your evaluation in any way if you knew that all the allegations that [mother] put in [the] affidavit were substantiated, not by only her own testimony, but by testimony of many other people, and evidence presented to the Court?

"A. Yes.

"Q. And if—if you knew that—that to be true, would that change your—would that modify, at all, your position on [father's] denial of every allegation?

"A. Yes."

[6] The trial court explained:

"[I]t's the Court's understanding that this child has, basically, not seen the father in ten or more years, and, therefore, would have no direct knowledge about the father whatsoever.

"[S] doesn't want contact [with father], and he wants his life to stay the way it is, and I can see that it's stress—it's stressful to him that all this is going on, just in itself."

The record does not reveal any other evidence regarding S's psychological well-being, his reaction to father's modification petition, or other information bearing on whether modification of parenting time would be in his best interests.

Ultimately, the trial court denied father's motion and made the following findings:

"2) [Father] has failed to show a substantial change in circumstances such as to allow this Court to modify the original decree.

"3) [Father] presented no evidence that supports a finding that visitation would be in the best interest of the child.

"4) [Father's] attempts to obtain contact with the child show a manipulation of the adults and the child and a willingness to violate the court order.

"5) Dr. Knapp's report and opinion were considered significant in this Court's decision. The doctor testified that even with the test results, if the earlier allegations were true, his opinion would be different. This Court found the allegations true in 1993 and still find[s] them credible."

Father appeals.

■■ In determining parental visitation rights, our primary concern is the best interests of the child. ORS 107.102(4)(b); *Shelton and Shelton*, 196 Or App 221, 230, 100 P3d 1101 (2004), *adh'd to on recons*, 197 Or App 391, 105 P3d 944 (2005); *Stringham and Stringham*, 124 Or App 626, 630, 863 P2d 504 (1993). Although our review is *de novo*, we give weight to the trial court's opportunity to observe the witnesses firsthand and its findings regarding the credibility of

"So, rather than being able to give me a generalized child's concern for a parent they don't know, or giving me information they've heard from other family members or mother, the Court has determined that it is not going to put the child in that situation, but will allow [mother's] attorney to give the Court a general overview of what they believe the child's position would be."

witnesses that result from that opportunity. *O'Donnell-Lamont and Lamont*, 337 Or 86, 89, 91 P3d 721 (2004), *cert den*, ___ US ___ , 125 S Ct 867, 160 L Ed 2d 770 (2005).

■      Father first contends that the trial court erred in its determination that father failed to show a "substantial change in circumstances" because a modification of parenting time requires only that the modification be in the child's best interests. We agree with father that the modification of parenting time does not require a showing of a substantial change in circumstances. *Meader v. Meader*, 194 Or App 31, 45, 94 P3d 123, *rev den*, 337 Or 555 (2004). In the course of conducting our *de novo* review of the record, we do not impose that requirement on father.

■      Next, father asserts that the trial court erred in its determination that there was "no evidence that supports a finding that visitation would be in the best interest of child." Father contends that the trial court failed to take into account that he has not had the opportunity to develop a relationship with S. In support of his assertion that parenting time is in S's best interests, father cites the strong policy in favor of allowing parental contact. *See* ORS 107.105(1)(b).[7] Additionally, father denies the allegations of abuse that were the subject of the 1993 proceeding, and he contends that Knapp's evaluation and testimony demonstrate that he does not present a danger to S.

---

[7] ORS 107.105(1)(b) provides, in part,

"If the parents have been unable to develop a parenting plan or if either of the parents requests the court to develop a detailed parenting plan, the court shall develop the parenting plan in the best interest of the child, ensuring the non-custodial parent sufficient access to the child to provide for appropriate quality parenting time and assuring the safety of the parties, if implicated. *The court may deny parenting time to the noncustodial parent under this subsection only if the court finds that parenting time would endanger the health or safety of the child.* The court shall recognize the value of close contact with both parents and encourage, when practicable, joint responsibility for the welfare of such children and extensive contact between the minor children of the divided marriage and the parties. If the court awards parenting time to a noncustodial parent who has committed abuse, the court shall make adequate provision for the safety of the child and the other parent in accordance with the provisions of ORS 107.718(4)."

(Emphasis added.)

■■  Generally, courts attempt to promote a strong relationship between children and their noncustodial parents. *Sundberg and Sundberg*, 150 Or App 349, 355, 946 P2d 296 (1997), *rev den*, 326 Or 464 (1998). Although ORS 107.101[8] and ORS 107.105(1)(b) require the court to recognize the value of parental contact, the child's welfare must be accorded greater weight. *See DeSantis and DeSantis*, 109 Or App 76, 79, 817 P2d 769 (1991). The policy in favor of parental contact depends on the parent's ability to demonstrate that he or she has the ability to act in the child's best interests. ORS 107.101; ORS 107.149.[9]

We conclude that father has not carried his burden of proof by a preponderance of the evidence. The trial court found that the allegations of abuse made in the 1993 proceedings were "credible." Implicit in the trial court's findings is a finding that J's testimony recanting her earlier allegations of abuse was not credible and that father's denial that he was abusive before 1993 was also not credible.[10] Because the trial court had the opportunity to assess mother's, father's, and S's credibility first-hand, we defer to those findings. We are also mindful of the fact that father failed to present evidence of any psychological evaluation of S. Given the circumstances of this case and the length of time that has elapsed since father had had any significant contact with S, it was incumbent on father to demonstrate that the exercise of parenting time

---

[8] ORS 107.101 provides, in part, that

"it is the policy of this state to:

"(1) Assure minor children of frequent and continuing contact with parents *who have shown the ability to act in the best interests of the child*[.]"

(Emphasis added.)

[9] ORS 107.149 provides:

"It is the policy of this state to assure minor children of frequent and continuing contact with parents who have shown the ability to act in the best interest of the child and to encourage parents to share in the rights and responsibilities of raising their children after the parents have separated or dissolved their marriage."

[10] J testified at the hearing that she lied in her previous affidavit because she had felt threatened by mother. Although she could not recall any specific threat made by mother, she asserted that she had felt generally threatened by mother and that she had also been concerned that mother would tell father that she had stayed out past curfew. About a year to a year and a half before the modification hearing, J contacted father and resumed a relationship with him. Until that time, she had not been in communication with him for approximately ten years.

would not be psychologically harmful to S. It may be that father has become rehabilitated, but whether parenting time is now in the best interests of S is left unanswered by this record.

Affirmed.