Argued and submitted August 18, affirmed October 13, 2010

Drake Rand LONG,
*Petitioner-Respondent,*
*and*

Melyssa Jean LEDUC,
*Respondent-Appellant.*

Marion County Circuit Court
08C34015; A142477

241 P3d 340

Sydney Eddy Brewster argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Mother appeals the trial court's judgment awarding father unsupervised parenting time with his son N. She assigns error to, first, the court's denial of mother's motion for a continuance; second, the trial court's exclusion of a letter the Department of Human Services sent to mother; and, third, the court's order granting father unsupervised parenting time. We reject mother's first two assignments of error without discussion and, for the reasons set forth below, reject mother's third assignment of error.

In our review of the facts, we are bound by the relevant trial court findings if they are supported by evidence in the record. ORS 19.415(3)(b). We apply that standard of review because this is not an exceptional case in which we choose to exercise our discretion to review *de novo*. *DHS v. Three Affiliated Tribes of Fort Berthold*, 236 Or App 535, 538-42, 238 P3d 40 (2010). Accordingly, we state the facts "consistently with [the trial court's] findings and augment them where necessary with uncontroverted background and procedural facts." *Id.* at 542.

Mother has a son (N) and a daughter (G). G was four years old when N was born in November 2008. N is father's child, but G is not. Mother and father were in a relationship for approximately three years. When N was four weeks old, mother and father ended their relationship after mother told father that either she was going to leave the family's home or father would have to leave. Father chose to leave. He explained, "I didn't want to have [mother] and the new baby and [G] leave the home, so I left." Father continued to pay mother's rent and utilities for a month and a half. After that time, mother moved out.

For her part, mother testified that she had asked father to leave because of anger problems. Mother explained that father's anger problems are demonstrated by inappropriate statements that he has made. As examples, mother described several statements that father made in front of G. First, after mother woke up early with N and G but let father sleep, mother testified that father was frustrated because mother did not wake him up to help and stated, "I don't want

you to cut me any F-ing slack." Mother testified that father then walked into a hallway where G was standing and said, "[mother is] going to go tell everyone I'm a deadbeat. I should just go kill myself." Second, mother testified that father, in front of G, "said that surgery is a 50/50 chance, 50 percent you'll live, 50 percent you'll die." In context—mother was pregnant with N—that prediction scared G. Third, mother stated that when she left father alone with G, "he would say inappropriate things" in front of G. Finally, mother recounts that, when she was five months pregnant, "we were arguing and [father] told me that if I ever took his son away from him he would plant drugs on me and call the police."

Both mother and father have used controlled substances. Father used methamphetamine but stopped five years ago after enrolling in a drug rehabilitation program and has not used methamphetamine since that time. Father and mother have used alcohol and marijuana together in the past year. However, father testified that he has been clean and sober for six months. Eleven months ago, father had to take a drug test as part of a job application. Father got the job.

Mother's pregnancy with N prompted father to address his past drug problem with renewed vigor. Father had stopped attending recovery meetings, but decided to start attending again just before N was born. Since renewing his commitment to attending recovery meetings, father has attended the meetings three times a week. In addition, father has recently completed a parenting class offered by Salem Hospital.

In December 2009, father filed a petition for parenting time with N. Mother opposed the petition, arguing, in part, that father should not have any unsupervised parenting time. In support of that argument, mother contended that father had used controlled substances, was an inexperienced parent, made inappropriate statements in front of the children, and had sexually abused G.

Father denied any allegation that he sexually abused G and posited that the allegation was fabricated by

someone other than G. The only evidence in the record of sexual abuse is through the testimony of mother and the maternal grandmother. The full extent of that evidence is mother's testimony that she believes G's allegations of sexual abuse are "a hundred percent" true and the grandmother's description of the allegations in slightly more detail during examination by mother's attorney.

"Q: Now, at some point this year you became aware of an allegation of sex abuse by [father] against [G], didn't you?

"A: I did.

"Q: And how did you find out about that?

"A: [G] is four, so she needs help sometimes wiping her bottom when she poops.

"THE COURT: I'm not going to let her testify to what the child said.

"[MOTHER'S ATTORNEY]: Okay. Okay.

"[GRANDMOTHER]: And so—

"[MOTHER'S ATTORNEY]: I understand that.

"Q: You can't testify to anything that was said. You can testify to what you saw personally, but not anything the child said, okay? So did you have concerns about any physical aspect of [G] at that time?[1]

"A: Well, she wouldn't allow me to help her.

"Q: With her toileting?

"A: Right.

"Q: Okay. And subsequent to that did you have any other concerns about [G] with [father] in the days that followed that?

"A: Quite a few. She got withdrawn and sad.

"Q: Okay. Any other symptomology, if you will, or uncharacteristic behavior?

"A: Tantrums.

---

[1] Mother does not assign error to the trial court's *sua sponte* ruling that the grandmother could not testify as to what G said.

"Q: Okay. Anything else?

"A: No.

"Q: Any increased fearfulness at all?

"A: She wasn't sleeping, but things—I don't know if that can all be put on that."

At the close of the hearing, the trial court granted mother sole custody. It also granted father unsupervised parenting time with N. The court explained that its judgment had to be based on N's best interests, it is important for children to have contact with both parents, and "when children are small they need to have more frequent contact * * * with the non-primary parent." Moreover, the court found that there was "no evidence that [father] is a danger to his son [and] no evidence that [father] has placed his son in danger."

Mother appeals and, as noted, we discuss only her assignment of error that the trial court awarded unsupervised parenting time to father. Mother contends that unsupervised parenting time is not in N's best interests. Specifically, mother argues that "Father's actions, abandoning [m]other and [N] when [N] was a week old, failing to take advantage of parenting time when it was given to him, and proposing to take [N] into a home where other children, and [f]ather himself had been abused[2] speak much louder than words." Mother also contends that father's past drug use, anger problems, and the allegation that father sexually abused G mandate awarding father supervised parenting time only.

In any proceeding to establish a judgment providing for parenting time with a child, "there shall be developed and filed with the court a parenting plan to be included in the judgment." ORS 107.102(1). When a parent requests, the court shall develop the parenting plan and, in doing so, "the court may consider only the best interests of the child and the safety of the parties." ORS 107.102(4)(b). The best interests determination is informed by the factors in ORS 107.137(1).[3]

---

[2] There is no evidence in the record to support mother's allegations that father failed to take advantage of parenting time that was offered to him, that father was sexually abused, or that sexual abuse has occurred in the home where father proposes to take N.

[3] ORS 107.102 does not specify factors that guide the "best interests" determination with respect to a parenting plan. Although ORS 107.137(1) addresses

Here, the court found no evidence that father posed a danger to N, and found that father had not exposed N to any danger. The court reasoned that a child's best interest generally includes contact with both parents. *See* ORS 107.101(1) ("It is the policy of this state to * * * [a]ssure minor children of frequent and continuing contact with parents who have shown the ability to act in the best interests of the child."); *see also* ORS 107.137(1)(c) (best interest factor includes the desirability of a continued relationship between parent and child); ORS 107.137(1)(b) (The parties' interest and attitude toward child is a factor in the best interests determination.). Accordingly, the court granted father unsupervised parenting time with N on the basis that it is in N's best interests.

 In determining whether parenting time by a noncustodial parent is appropriate, our paramount concern is with the best interests of the child. *Sundberg and Sundberg*, 150 Or App 349, 355, 946 P2d 296 (1997), *rev den*, 326 Or 464 (1998). And, as to whether parenting time with the noncustodial parent should be unsupervised, "[g]enerally, courts attempt to promote a strong relationship between children and their noncustodial parents. *Kilpatrick and Kilpatrick*, 38 Or App 159, 161, 589 P2d 1153 (1979); *see also* ORS 107.149."

---

factors that are relevant to determining best interests with respect to custody, they are also material in determining whether parenting time should be supervised.

ORS 107.137(1) provides:

"In determining custody of a minor child under ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child;

"(c) The desirability of continuing an existing relationship;

"(d) The abuse of one parent by the other;

"(e) The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f) The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child. However, the court may not consider such willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in a pattern of behavior of abuse against the parent or a child and that a continuing relationship with the other parent will endanger the health or safety of either parent or the child."

*Sundberg*, 150 Or App at 355. Thus, we have affirmed an order granting a parent unsupervised parenting time with a child where "[t]here is no evidence that [the parent's] visits need to be supervised to protect the child from [the parent.]" *Id.* at 355-56.

Here, father established that he can act in N's best interests. He has addressed his prior drug problems and has implemented and followed a plan to continue to stay clean. Furthermore, father has taken a parenting class on his own volition to prepare to take care of N.

Mother's contention that father poses a danger to N is not supported by evidence in the record. To be sure, mother's allegations are concerning. However, given the lack of evidence to support her allegations, along with our standard of review and the trial court's express finding that father does not present any danger to N, mother has failed to satisfy her burden on appeal of proving reversible error.

Mother argues that father abandoned her and N when N was one week old. However, mother's testimony is not consistent with her argument. She testified that she gave father an ultimatum that father had to leave or else mother would leave with N. Mother gave father that ultimatum because she was concerned about inappropriate statements that father made in front of the children. Father chose to leave so that mother and N could live in the family home, and he continued to pay mother's rent until she moved. Thus, although father did move out of the family home—at mother's insistence—there is no evidence to suggest that father abandoned the family.

We next address mother's arguments that father's drug use and anger problems require that father only be allowed supervised parenting time. We similarly conclude that the evidence in the record in this regard does not support a conclusion that supervised parenting time with father is necessary. Mother contends that father has anger problems based on inappropriate statements that he made in front of G. To be sure, father's statements reveal less than ideal parenting. One statement—father's threat to plant drugs on mother if she took N away from father—is particularly

concerning. However, mother never connected father's inappropriate statements to N's best interests. As to father's drug use, father has not used methamphetamine in five years and has a plan for staying clean. Father's historical drug problems and present recovery do not present a barrier to unsupervised parenting time. *See Brinkly and Brinkly*, 223 Or App 113, 119, 195 P3d 405, *rev den*, 346 Or 257 (2008) (mother's history of methamphetamine use did not preclude the court from granting mother custody, not to mention unsupervised parenting time, when mother had been clean for more than one year).

Finally, we consider mother's allegation that father sexually abused G. The trial court found that, based on the evidence presented, there was no evidence that father posed a danger to N. Mother testified only that she believed G's sexual abuse allegations against father. Mother did not testify as to what G alleged or as to why G's allegations were believable. Grandmother's testimony regarding G's symptoms of alleged sexual abuse—not wanting to be helped with toileting, growing withdrawn and sad, throwing tantrums, and having trouble sleeping—are not connected by any evidence to sexual abuse. Moreover, there is no evidence that would allow us to take the next inferential step that, if abuse occurred, father was the abuser or that father's alleged sexual abuse of G could result in harm to N. Thus, although allegations of sexual abuse are deeply concerning, mother failed to produce evidence to support them.

In sum, mother makes numerous concerning but unsupported allegations about father. The record supports the trial court's finding that there is no evidence that father presents a danger to N. We conclude that the trial court did not err in granting father unsupervised parenting time.

Affirmed.