Argued and submitted May 8, affirmed July 31, 2013

In the Matter of the Adoption of A. C. C.,
a Child.

T. S. R.;
and J. K. R., fka J. K. S.,
*Appellants,*

*v.*

J. B. C.,
*Respondent.*

Baker County Circuit Court
12002CF

J. B. C.,
*Petitioner-Respondent,*

*and*

STATE OF OREGON,
by and through the Department of Human Services,
*Petitioner below,*

*v.*

J. S.,
aka J. R.;
and T. R.,
*Respondents-Appellants.*

Baker County Circuit Court
02700; A152802

308 P3d 244

Rebecca J. Knapp argued the cause for appellants. With her on the briefs was Hostetter Knapp, LLP.

George W. Kelly argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Mother and stepfather appeal a supplemental judgment modifying a prior custody judgment and a general judgment denying their petition for stepfather to adopt child. They assign error to the trial court's modification of the custody judgment, contending that there was insufficient evidence in the record for the trial court to conclude that it was in child's best interests to allow father parenting time. They further assign error to the trial court's denial of the adoption petition. We affirm.

The undisputed facts are as follows. When child was born, mother and father were living together, but they never married. Shortly after child's birth, mother moved, and child continued to live principally with father for the following two years. Thereafter, father filed a filiation proceeding seeking joint custody of child, and the court entered a judgment that granted mother custody and father supervised parenting time once a week. The court's decision to limit father's parenting time was based on its findings that, while under the care and supervision of father, child learned to use obscenities and expressed anger in excess of that of a boy of his age. The court also found that father had anger problems; that, while child was in potty training, father made child hold feces in his hands if child had an accident; and that, in general, father was not as concerned about child's safety as mother was. The judgment, among other things, required father to take parenting classes, undergo a psychological evaluation, and pay child support.

Approximately seven months after the judgment was entered, mother filed a motion to terminate father's parenting time. The court granted the motion, terminating father's parenting time until he provided proof that he had complied with the judgment's requirements that he undergo a psychological evaluation and pay child support.

Father eventually completed multiple parenting classes and underwent a psychological evaluation, which concluded that he met the diagnostic criteria for narcissistic personality disorder. Despite satisfying those requirements of the custody judgment, father did not contact mother or

child for almost two years following the termination of his parenting time. He then petitioned for parenting time, but that petition was denied.

Following the denial, over five years passed without father contacting mother or child. During that time, father married a woman who had a daughter from a previous relationship, and father and his wife eventually had a son. Father once again moved to modify the custody judgment to grant father parenting time. Additionally, father's attorney sent a letter to mother's attorney requesting parenting time. Shortly thereafter, mother and stepfather petitioned to terminate father's parental rights and to permit stepfather to adopt child without father's consent. Father opposed the petition for adoption. The court consolidated the modification proceeding and the adoption proceeding and held a hearing.

At the hearing, father presented evidence about his parenting of his stepdaughter and his younger son that demonstrated his involvement in their lives and his ability to parent them. Based on that testimony, the trial court found that father has a healthy relationship with his stepdaughter and younger son.

Father also submitted evidence that he had undergone a second psychological evaluation, which concluded that the symptoms of his narcissistic personality disorder were in remission and that there was nothing to suggest that father had anger control or aggression issues. However, the doctor who evaluated father specifically noted that he could not give an opinion regarding child's safety with father because he had not had the opportunity to gather sufficient information to make that assessment.

Mother testified that, after she told child about father's desire to have parenting time, she observed changes in child's behavior, including increased signs of sadness and anger. In response to those behavioral changes, child began to see a therapist, Wright, who diagnosed child as having adjustment disorder with anxiety caused by father's request for parenting time. Wright testified that child had had an anxiety attack while thinking about being forced to see father and that child had expressed experiencing a large

amount of worry about spending time with father. Child repeatedly told Wright that he did not want to see father. When Wright asked him what he would do if he were forced to have contact with father, child told her that he would kill himself. On another occasion, when asked the same question, child said that he would scream and pull his hair out.

Wright concluded that, in her opinion, child was not ready for contact with father. She stated that having contact with father would be child's "worst fear come true" and expressed concern that it would traumatize child. She further stated that parenting time would cause psychological harm to child.

When asked on cross-examination whether she thought that contact between father and child would cause child's fears and anxieties about father to subside, Wright stated that she was concerned that the exact opposite would occur. She acknowledged, however, that there was a possibility that contact could be positive for child.

Child testified at the hearing and reiterated that he did not want to see father. He explained that spending time with father worried him and that the prospect of having contact with father had made him very angry. Child further testified that he had told Wright that he would rip his hair out if he were forced to have contact with father and explained that she had taught him a breathing exercise to do to remain calm and avoid having such a reaction. When asked how he would feel if he was forced to see father, child explained that he would try to avoid father and stay calm.

With respect to father's motion to modify the judgment, mother and stepfather contended that the evidence, specifically Wright's testimony, established that child would suffer psychological harm if father were permitted to have parenting time and that, consequently, granting father parenting time was not in child's best interests. They contended that father's evidence, although demonstrating that he had a good parenting relationship with his stepdaughter and younger son, did not demonstrate that granting father parenting time would not place child at a risk of physical, psychological or emotional harm. Thus, mother and stepfather

contended that father had failed to present sufficient evidence from which the court could find that it was in child's best interests to have parenting time with father.

Father responded that it was in child's best interests to have parenting time with him. He explained that his psychological evaluation established that he did not pose a risk of harm to child and contended that child's anxiety associated with having contact with father was due to mother's attitude toward father. Father also contended that his relationship with his stepdaughter and younger son demonstrated that he is a capable parent.

With respect to the petition for adoption, mother and stepfather contended that the adoption of child by stepfather should be granted without father's consent because father had willfully deserted or neglected child within the one-year period preceding the filing of the adoption petition. Father responded that the court could not grant the adoption petition, because he withheld his consent to the adoption and had neither deserted nor neglected child within the year preceding the filing of the petition. He specifically contended that, by filing his motion to modify the custody judgment to allow parenting time and sending a letter to mother requesting parenting time, he had demonstrated a desire to reestablish a relationship with child.

The trial court granted father's motion to modify the custody judgment. It ordered that father would be allowed to meet child in Wright's office, but only after Wright had time to prepare child for meeting father. The court ordered that father would be allowed to see child outside of Wright's office only after Wright was satisfied that this was appropriate. The court permitted father to begin written correspondence with child, but barred him from telephone contact with child until Wright provided her approval. In its memorandum opinion, the court stated that, "from the testimony presented and the court's interaction with [child,] it is the court's intention that [increases in contacts between father and child] occur slowly and with the assistance of Ms. Wright."

The trial court also denied the adoption petition. It concluded that mother and stepfather had not proved

by clear and convincing evidence that father had willfully deserted or neglected child, noting that, in the year preceding the filing of the adoption petition, father had filed his motion to allow parenting time and directed his attorney to send a letter to mother requesting parenting time. The court concluded that father's consent was required to grant the adoption petition.

Mother and stepfather appeal, assigning error to the court's modification of the custody judgment and to the court's denial of the adoption petition. We begin with the court's grant of father's motion to modify the judgment to provide father with parenting time. ORS 107.135(1)(a) provides that a court may modify a portion of a judgment that provides for parenting time.[1] In doing so, the court's focus is on the child's best interests, and the party moving for modification bears the burden of proving that the modification is in the child's best interests. *See Cole v. Wyatt*, 201 Or App 1, 6, 116 P3d 919 (2005) (noting, in the context of modifying a judgment to provide for parenting time, that "our primary concern is the best interests of the child"). "[O]ur standard of review of a trial court's best interests determination is for abuse of discretion. Thus, we will reverse only if a trial court's discretionary determination is not a legally permissible one." *Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116, *rev den*, 353 Or 103 (2012) (footnote omitted).

Mother and stepfather contend that the trial court erred in modifying the judgment to provide father with parenting time because father had failed to present evidence that established that parenting time with father was in child's best interests. Mother and stepfather contend that the testimony of Wright establishes that parenting time with father would be psychologically damaging and that father

---

[1] ORS 109.103(1) provides that, in the context of a proceeding relating to a child born to parents who are not married to one another,

"[t]he parents have the same rights and responsibilities regarding the custody and support of, and parenting time with, their child that married or divorced parents would have, and the provisions of ORS 107.093 to 107.449 that relate to custody, support and parenting time * * * apply to the proceeding."

Thus, although mother and father never married, the provisions of ORS 107.093 to 107.449 govern the proceeding that resulted from father's motion to modify the custody judgment.

has not submitted any evidence that provides otherwise. They contend that father's evidence only relates to him and his ability to parent and does not relate to how parenting time with him will affect child. Thus, they contend that father failed to establish that parenting time with father was in child's best interests.

Father responds that the evidence that he presented at the hearing establishes that he has the ability to act in child's best interests. Father relies on the evidence that he has completed parenting classes, that he has a good parenting relationship with his stepdaughter and younger son, that his psychological evaluation shows that he does not have anger issues, that Wright stated that contact between father and child could be positive for child, and that child said that, if he was forced to have parenting time with father, he would try to stay calm.

We are satisfied that the court did not err in this instance. The court reached its decision after hearing extensive testimony from—among others—child's therapist, mother, father, mother's husband, and various relatives. Most importantly, the trial court had the chance to hear testimony from, and ask questions of, child directly. *See Cole,* 201 Or App at 6-7 ("[W]e give weight to the trial court's opportunity to observe the witnesses firsthand and its findings regarding the credibility of witnesses that result from that opportunity.").

In light of all the testimony, the trial court did not abuse its discretion by concluding that it was in child's best interests to have limited contact with father. Several statements in the record support that conclusion, not all of which we recount here. First, when Wright was asked by father's counsel whether contact with father could end up being a positive for child, Wright answered, "Yeah, it could." When asked whether contact with father would help ameliorate some of child's fears and anxieties about father, Wright responded that "[i]t could subside them." Although Wright testified that she did not believe that child was ready to see father and was concerned that visitation with father could prove traumatic for child, she also testified that, if the court decided to order visitation, she would do what she could to

help prepare child to see father and would help oversee the visitations. Child's stepfather also testified that he encouraged child to meet his father, that he knew child well, and that he felt it might be a "good thing" for child to meet with father.

Our conclusion also comports with Oregon's statutory policy of promoting strong relationships between a child and a noncustodial parent who has demonstrated "that he or she has the ability to act in the child's best interests." *Id.* at 8 (citing ORS 107.101 and ORS 107.149). In addition to presenting evidence that he had completed parenting classes and that his narcissistic personality disorder was "in remission," father presented testimony from friends and family members that father was currently a capable, involved, and loving parent to his other son and stepdaughter.

Moreover, the very limited and tentative nature of the court's parenting time modifications supports our conclusion that the trial court did not abuse its discretion. The court granted a high degree of supervisory authority to the child's therapist, Wright. Pursuant to the judgment's terms, contact between child and father will take place only after Wright has had time to prepare child for that contact. Moreover, those initial contacts will be permitted only at Wright's office until Wright is "satisfied" that child and father can safely meet outside the office. The court's take-it-slow approach was appropriate under the circumstances and supports our conclusion that the trial court did not make a legally impermissible determination. *Sjomeling*, 251 Or App at 187.

Mother relies heavily on *Cole*, and that case does bear many similarities to the present one. In *Cole*, as is the case here, the mother and father had a child but never married. 201 Or App at 3. The father brought a petition to establish paternity, and although the trial court ruled that the father was the child's parent, it denied the father parenting time. The court found that the father posed a serious and imminent danger to the child's well-being. For nine years, the father did not seek modification of the judgment, although he occasionally sent gifts to the child and showed up to one of the child's birthday parties.

The father eventually moved to modify the judgment, contending that it was in the child's best interests to allow him parenting time. In support of his motion, the father alleged that he did not pose a risk to the health and safety of the child, presenting, among other evidence, a psychological evaluation and evidence that he had a constructive relationship with his 11-year-old step-granddaughter. The doctor who performed the psychological evaluation stated that the father did not pose a risk of abuse to the child and would be a safe prospect for having visitation with the child. However, the doctor did not examine the child nor did he make an assessment of whether the child's best interests would be served by contact with the father.

The trial court denied the father's motion, concluding that the father had not presented any evidence that it would be in the child's best interests to allow the father parenting time. The father appealed, and we affirmed. We explained that, although courts generally attempt to promote a strong relationship between children and their noncustodial parents, a child's welfare is accorded greater weight.

Ultimately, we concluded that the father had not carried his burden of proving that parenting time was in the child's best interests. We explained that, given the length of time that had elapsed since the father had had any significant contact with the child, "it was incumbent on father to demonstrate that the exercise of parenting time would not be psychologically harmful to [the child]. It may be that father has become rehabilitated, but whether parenting time is now in the best interests of [the child] is left unanswered by this record." *Id.* at 8-9.

Similar though the facts between *Cole* and the present case may be, the fatal defect in mother's argument is that our review in *Cole* was *de novo*, that is, we were engaging in an independent determination of what was in the child's best interests in the first instance. *Id.* at 6. Here, however, we are not engaged in *de novo* review.[2] Thus, even if we might have

_____

[2] Mother does not request that we exercise our discretion to conduct *de novo* review in this case. *See* ORAP 5.40(8) (stating that when an appellant seeks to have us exercise our discretion to conduct *de novo* review, the appellant "shall concisely state the reasons" why we should do so).

reached a different decision, we must affirm the trial court's disposition so long as its exercise of discretion resulted in a "legally permissible" determination. *See Sjomeling*, 251 Or App at 187. We acknowledge that the evidence overwhelmingly tends to suggest that child does not presently want to see father. As important as the fact of child's position on the matter may be, the question for us is whether the trial court abused its discretion in concluding that it is in child's best interests to have very limited visitation with father; on this record, for the reasons stated above, we cannot say that an abuse of discretion occurred.

We next consider mother and stepfather's contention that the trial court erred in denying their petition for step-father to adopt child. Specifically, they contend that the trial court erred in denying the adoption petition because father's neglect of child is not excusable.

Generally, an adoption cannot proceed unless the noncustodial parent consents to the adoption. ORS 109.312. ORS 109.324(2) provides that the trial court is permitted to allow an adoption to proceed without the consent of the noncustodial parent if that parent has willfully deserted or neglected, without just and sufficient cause, to provide proper care and maintenance of the child within the one year immediately preceding the filing of the petition for adoption.

"[W]illful desertion occurs when a parent's actions or inaction evince an intentional choice directed toward the specific result of deserting the child." *C. R. H. v. B. F.*, 215 Or App 479, 484-85, 169 P3d 1286, *rev den*, 343 Or 690 (2007). Desertion "is parental conduct that evinces a settled purpose to forgo, abandon, or desert all parental duties and parental rights in the child." *Eder v. West*, 312 Or 244, 270, 821 P2d 400 (1991). A parent neglects to provide proper care and maintenance of the child within the one year immediately preceding the adoption action if, during "the year preceding the filing of the petition for adoption, [the] parent willfully fail[s] to manifest substantial expressions of concern which show that the parent has a deliberate, intentional, and good faith interest in maintaining a parent-child relationship[.]" *Id.* at 266.

Here, the trial court stated that, within the year preceding the filing of the adoption petition, father underwent a psychological evaluation in order to regain parenting time, filed a motion to modify the judgment to provide for parenting time, and directed his attorney to write a letter to mother's attorney requesting parenting time. Based on those findings, the court concluded that father had neither deserted nor neglected to provide proper care and maintenance for child within the year preceding the filing of the adoption petition. There was evidence in the record to support those findings and we therefore conclude that the trial court did not err in denying the adoption petition.

Affirmed.