Submitted April 2, reversed and remanded June 3, 2021

Justyne M. STRAND,
*Petitioner-Respondent,*

*v.*

James P. GARVIN,
*Respondent-Appellant.*

Marion County Circuit Court
19DR17579; A174451

492 P3d 1266

Father, who is incarcerated, appeals an order denying his motion under ORS 107.135 to modify a default judgment that denied him parenting time with his child based on a finding that it would not be in the child's best interests. Father argues, among other contentions, that the trial court failed to make a sufficient record for meaningful appellate review of the court's exercise of discretion. *Held*: At the time that father filed his motion, the trial court would have been aware that father initially had taken reasonable actions to protect his interest in parenting time but was denied that opportunity for reasons beyond his control; the findings about parenting time in the default judgment were based on somewhat conclusory representations by mother about father and about the effects of prison on children; father wished to challenge those representations; and father had not had a previous opportunity to fully develop a factual record or otherwise challenge mother's representations. Given that context, and without any explanation from the trial court for its summary denial of father's motion, the Court of Appeals had no way of determining whether the court's denial of the motion was within the permissible range of the court's discretion.

Reversed and remanded.

Sean E. Armstrong, Judge.

James Garvin filed the brief *pro se*.

No appearance for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

Father, who is incarcerated, appeals an order denying his motion under ORS 107.135 to modify a judgment that denied him parenting time with his child based on a finding that it would not be in the child's best interests. For the reasons explained below, we agree with father that the court failed to make a sufficient record for us to meaningfully review its exercise of discretion, and we therefore reverse and remand for further proceedings. *See Dept. of Human Services v. N. J. V./D. L. O.*, 290 Or App 646, 648, 419 P3d 783 (2018) (agreeing with the mother that the juvenile court erred by denying her motion to continue a guardianship hearing without making a sufficient record of its reasons for doing so).

The relevant background facts are procedural in nature. In September 2019, mother filed a petition seeking sole custody of the parties' child, N, who was four years old at the time. Mother, using a form petition, checked a box stating that father "should not be granted parenting time because this would endanger the health or safety of the children." In the space provided on the form to "state supporting facts," mother stated that father

> "has not seen [N] since 2016, incarcerated since 2016 for domestic violence in front of [N]. Earliest release date is 2024, not healthy for her mentality. Traumatizing to be in a prison for young child. Not safe to be around that environment. [Father] is gang affiliated, has started riots & has had a lot of disciplinary actions. Not an ideal situation for any child."

A deputy sheriff personally served father with the petition on September 20, 2019. On October 21, 2019, mother filed a motion seeking an order of default and entry of judgment on her petition. The court granted the motion that same day, and a default judgment was entered the next day, October 22, 2019. The judgment awarded sole custody to mother and, by way of a check-the-box notation, stated that father "must not have parenting time because this would endanger the health and safety of the children."

The following day, father's response to the petition was filed with the court. The record reflects that it was

delivered to the prison mail system at the Oregon State Correctional Institution (OSCI) on October 16, 2019, well before father's response was due, but apparently did not arrive at the court until a week later. In his response, father contested only parenting time. He stated, "I would like to be granted physical visits, video visits, phone calls, and mail. I would like the physical visits weekly due to the fact that I'm in Salem as is my daughter so traveling isn't very far."

The trial court record reflects no further activity in the case until the following April, when father filed a motion for relief from the default judgment under ORCP 71, on the grounds of "mistake, inadvertence, surprise or excusable neglect." In the motion, father explained that he had placed his response in OSCI's legal mail system for delivery to the court for filing and service on petitioner by first-class mail on October 16, 2019, and he attached a log from the prison mail system reflecting mailings to the court and to mother on that date. According to father, he had not received notice of the default, so in February 2020, after not hearing anything about the case, he asked one of the prison's legal assistants to check on the status of the case. The legal assistant informed him that a default had been entered.

The trial court denied father's motion a week after it was filed, without any response from mother. The order stated, "Motion DENIED. [Father] may move to modify parenting time provisions under ORS 107.135." The statute referenced by the court provides that the court "may at any time after a judgment of annulment or dissolution of marriage or of separation is granted, upon the motion of either party and after service of notice on the other party in the manner provided by ORCP 7 *** (a) [s]et aside, alter or modify any portion of the judgment that provides for the appointment and duties of trustees, for the custody, parenting time, visitation, support and welfare of the minor children and the children attending school."[1]

---

[1] By its terms, ORS 107.135 applies after entry of judgment of annulment or dissolution of marriage or of separation is granted. However, ORS 109.103, which governs proceedings to determine custody, support, and parenting time in the case of unmarried parents, provides that those "parents have the same rights and responsibilities regarding the custody and support of, and parenting time with, their child that married or divorced parents would have, and the

On July 13, 2020, father filed a motion under ORS 107.135 to set aside the default judgment, as the court indicated he could. In the motion, which was supported by an attached declaration, father explained that he sought to modify the judgment with respect to parenting time—specifically, the provision of the judgment stating that "[father] must not have parenting time because this would endanger the health and safety of the children." Father argued that "[n]o factual findings were made" as to how parenting time might endanger N, and he submitted a declaration and attached exhibits to contest mother's representation in her petition on that point.

In his declaration, father stated that he was deeply ashamed and regretful for the damage that he had done to N by committing the crime for which he was convicted, and that during his incarceration he had "worked very hard to change my life, become rehabilitated and fully identify and overcome the issues that contributed to the criminal behavior that I stand convicted of." He stated that he had participated "in every rehabilitation and self-improvement program that is available to me," and he attached certificates of completion for various prison programs, including on anger management, self-control, and "making changes."

Father also attached a letter from an officer in the Security Threat Management Unit at OSCI. The letter states that father had arrived at OSCI from another correctional facility in late August 2019 and, during his initial meeting with the officer, "indicated that his child was the most important thing in his life." The letter goes on to explain that the officer and father had discussed that "[father's] choices moving forward would ultimately prove if this were true or not," including whether father would be able to avoid engagement with other inmates, even if they were aggressive toward him. The letter states that father was "viciously assaulted by someone believing him to be a rival gang member" in October 2019, but that father "made a very important

provisions of ORS 107.094 to 107.449 that relate to custody, support and parenting time" apply. *See T. S. R. v. J. B. C.*, 257 Or App 745, 751 n 1, 308 P3d 244 (2013) ("[A]lthough mother and father never married, the provisions of ORS 107.093 to 107.449 govern the proceeding that resulted from father's motion to modify the custody judgment.").

choice in that moment and did not fight back," instead allowing staff to intervene. The letter concludes:

> "I believe that [father] is committed to a different direction in his life. His choice in the 'heat of the moment' is obvious proof of commitment that [father] is hopeful for better outcomes and his relationship with his child appears the catalyst for this change.

> "I believe this commitment to change recently proven through action will ultimately lead to better choices he makes for himself and family."

Father's declaration also addressed the logistics of visitation while he was imprisoned. He described the video interactive calls that the Oregon Department of Corrections has made available to families, an electronic messaging option (subject to the same monitoring as regular mail), and in-person visitation between prisoners and their families. He then attached a proposed parenting plan that would give him telephone contact with N (not monitored by mother), unlimited messaging and video calls, and "physical contact visits *** at least once weekly."

Father submitted a proposed order along with his motion to modify the judgment. The form used by father was essentially an order on a motion to show cause and provided as follows:

> "IT IS HEREBY ORDERED that the parties appear on the __ day of _____ , 2020, at __ a.m./p.m., in Room __ of the Marion County Courthouse in Salem, Oregon, with Respondent appearing at said place and time telephonically, from the Oregon State Correctional Institution (OSCI) in Salem, Oregon, to show cause why the October 22, 2019 General Judgment Of Custody And Parenting Time And Child Support should not be modified to provide for parenting time and visitation between Respondent and the minor children as requested in Respondent's motion.

> "IT IS FURTHER ORDERED that Petitioner shall ensure that the minor child, [N], appear before the Court at the time and place of said hearing, for inquiry by the Court and parties as to their personal preferences and related issues concerning parenting time and visitation."

The use of a "show cause" form was consistent with the Uniform Trial Court Rules and Supplementary Local Rules (SLR) for Marion County, which provide that modification proceedings must be initiated by a show cause order. *See* UTCR 8.050(1) ("Modification proceedings must be initiated by an order to show cause based on a motion supported by an affidavit setting forth the factual basis for the motion or by other procedure established by SLR."); Marion County Circuit Court SLR 8.061 ("The provisions of SLR 5.065 [concerning show cause orders] shall apply in domestic relations actions.").[2]

A week after the motion and proposed order to show cause were submitted, the trial court denied the motion, noting "denied" across the top of the proposed order, with no further elaboration.

Father now appeals that denial of his motion to modify the judgment, arguing that the trial court erred by effectively denying him any parenting time without any explanation and without any meaningful opportunity to be heard on what is in the best interest of his child. He argues that a trial court can err when it fails to "make a record reflecting an exercise of discretion" and "must *** supply enough information to enable appellate courts to engage in meaningful review of the court's exercise of discretion." (Quoting *Ray Klein, Inc. v. Wade*, 271 Or App 690, 691, 351 P3d 88, *rev den*, 358 Or 374 (2015), and *State v. Kacin*, 237 Or App 66, 73, 240 P3d 1099 (2010).) On this record, we agree with father that the court erred in summarily denying his motion without any explanation.

Under ORS 107.135(1), a party seeking to modify a judgment as to parenting time must serve the notice on the other party in the manner provided under ORCP 7. ORS

---

[2] *See also* SLR 5.065(6) ("If a Show Cause Order does not require the personal appearance of the opposing party and the opposing party fails to file a written Answer to the Show Cause Order within the time allowed by the Order, the moving party may present *ex parte*, an Order granting relief sought by the moving party, providing the return of service of the Show Cause Order has been filed of record or is presented with the proposed *ex parte* Order. The court, in its discretion, may allow or deny the requested relief in whole or part, *ex parte*, or the court may direct that a hearing be scheduled for the presentation of additional evidence in support of the relief sought by the moving party.").

107.135(1). Thereafter, "[w]ithin 30 days after service of notice under subsection (1) of this section, the party served shall file a written response with the court." ORS 107.135(14). And, as set forth above, the applicable UTCRs and the SLRs for Marion County contemplate a "show cause" process for motions to modify domestic relations orders.

Father, following that framework, presented the trial court with a motion and proposed order to show cause why the custody judgment should not be modified to grant him parenting time. The motion and proposed order asked the court to make a discretionary call as to whether father's motion and supporting materials met the minimum threshold to require mother to show cause why father should not receive parenting time.

Under the circumstances of this case, we cannot meaningfully review the basis for the trial court's summary denial of that motion. First of all, the procedural leadup to the motion provides no obvious rationale for a summary denial. Father initially was found in default for failing to file a response to mother's petition on the issue of custody and parenting time within 30 days of service, notwithstanding the fact that he delivered a response to prison authorities well within the time required for filing. The timeliness of father's initial response—and whether it was error to enter the default judgment in the first place—are not directly at issue in this appeal, so we are not called upon to resolve whether father's initial response should have been considered timely under a "prisoner mailbox rule," whereby pleadings are deemed filed when they are delivered to an appropriate prison official.[3]

---

[3] *See, e.g.*, *Houston v. Lack*, 487 US 266, 271-72, 108 S Ct 2379, 101 L Ed 2d 245 (1988) (interpreting "filed" for purposes of the Federal Rules of Appellate Procedure to include delivery to prison officials; "Unskilled in law, unaided by counsel, and unable to leave the prison, [the prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice."); *Hickey v. OSP*, 127 Or App 727, 734, 874 P2d 102 (1994) (interpreting ORAP 1.35 to mean that a petition "shall be deemed to have been filed at the time it is delivered to the person authorized by the institution to accept delivery for forwarding to the State Court Administrator pursuant to ORAP 1.35," thereby avoiding the need to address any constitutional problems that might arise from a narrower construction); *see also*

Nevertheless, the circumstances of the default—
that father took reasonable steps to file a response to the
initial petition, wished to contest parenting time, and was
denied that chance for reasons beyond his control—informs
our assessment of the possible reasons for the court's later
actions. As a result of the default, the initial denial of visita-
tion to father was based solely on mother's representations
in her declaration that visitation was "not healthy for [N's]
mentality," that the prison environment would be trauma-
tizing and unsafe, and that father is "gang affiliated, has
started riots & has had a lot of disciplinary actions."

When father then attempted to set aside that default
judgment on the basis of mistake, inadvertence, surprise, or
excusable neglect under ORCP 71, pointing out his efforts to
respond and producing evidence that he had, in fact, deliv-
ered his response to the prison mail system a week before
a response was due, the trial court denied the motion with-
out waiting for a response from mother. That is, despite the
stakes for father as a parent, the evidence of his good faith
and reasonable efforts to obtain a hearing on the issue of
parenting time, and without knowing whether mother even
opposed the motion, the court denied father's motion and
instead directed him to the modification process under ORS
107.135.

The trial court's ruling on the motion to set aside
the judgment, like the entry of the original default, is not
directly at issue in this appeal; but, again, it provides
important context for understanding the court's later sum-
mary denial of father's motion to modify. Assuming that
father's initial filing was late, the underlying circumstances
would seem to be exactly the type of situation that ORCP
71 is intended to address, that is, where a party has a good
excuse for missing the deadline. But the court denied the

---

*Harvey v. Christie*, 237 Or App 237, 239, 239 P3d 279 (2010) (declining to reach an
argument by an inmate in a corrections institution that his appeal to the circuit
court from an arbitrator's ruling was timely "because of the 'prisoner mailbox
rule,' under which a pleading is considered to have been filed with the court when
delivered to an appropriate prison official"); *but see Stull v. Hoke*, 326 Or 72, 81,
948 P2d 722 (1997) (rejecting a prisoner mailbox rule for statute of limitations
purposes under ORS 12.020, and concluding "that, in the type of situation pre-
sented in this case, the operative moment for 'filing' an action is when the court
clerk or a person exercising the duties of that office receives the complaint").

motion to set aside, apparently based on the understanding that father would later have a meaningful opportunity to address the question of parenting time through the modification process under ORS 107.135.

All that is to say that, by the time father presented his motion to modify and the proposed order to show cause, the trial court would have been aware that (1) father initially had taken reasonable actions to protect his interest in parenting time; (2) the findings about parenting time in the default judgment were based on somewhat conclusory representations by mother about father and about the effects of prison on children; (3) father wished to challenge those representations; and (4) he had not had a previous opportunity to fully develop a factual record or otherwise challenge mother's representations. Given that context, it remains possible that the trial court had in mind some permissible basis for denying an order to show cause and concluding that further development of the record with regard to parenting time was unnecessary, but that reason is not readily apparent to us.

The lack of an explanation from the trial court in this case is not merely a matter of form. We have repeatedly held that parents do not automatically forfeit the right to visitation merely by the fact of incarceration. *See Stewart and Stewart*, 256 Or App 694, 695, 302 P3d 818 (2013) ("'[A] parent's incarceration does not invariably require that visitation be denied.'" (Quoting *Harris v. Burns*, 137 Or App 355, 359, 904 P2d 648 (1995), *rev den*, 322 Or 644 (1996).)). Rather, "'[e]ach case must be decided on its own merits and not on the basis of a policy not to allow children to visit their parents at the penitentiary.'" *Stewart*, 256 Or App at 695 (quoting *State ex rel Juv. Dept. v. Clampitt/Hale*, 18 Or App 12, 16, 523 P2d 594 (1974)). Moreover, it is well established that the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment to the United States Constitution. *Dept. of Human Services v. B. A. S./J. S.*, 232 Or App 245, 260, 221 P3d 806 (2009), *rev den*, 348 Or 280 (2010). Thus, a trial court's decisions regarding the parenting time of a noncustodial parent generally must comport with notions of

fundamental fairness. *See State ex rel Juv. Dept. v. Burris*, 163 Or App 489, 495, 988 P2d 414 (1999) (because "[p]arental rights are of paramount importance[,] proceedings affecting those rights must comport with due process").

Father also has a statutory right to review of the trial court's decision, and without any explanation from the trial court regarding the reason for its summary denial, we have no way to meaningfully review whether the court's exercise of discretion regarding the motion to modify comported with those legal principles regarding parenting time. *See State v. Colby*, 295 Or App 246, 253, 433 P3d 447 (2018) (reversing where this court could not "meaningfully review whether the trial court correctly applied the law" because we could not tell "what standard the trial court applied \*\*\* [and were] unable to determine whether it based its ruling on the correct legal premises"). It is possible that the trial court summarily denied the motion on the basis of father's incarceration alone, or because it believed that father was given sufficient process, or because it discredited, on a cold record, the evidence that father submitted with his motion. We have no way to determine on this record which, if any, of those bases the trial court relied upon or whether any of them would fall within the trial court's permissible range of discretion under the circumstances. We therefore reverse and remand for reconsideration of father's motion to modify.

Reversed and remanded.